## THE S. OTERI.

### UNITED STATES v. VALENSONA.

### SAME v. OTERI et al.

#### (Circuit Court of Appeals, Fifth Circuit. December 11, 1894.)

#### Nos. 259 and 260.

1. SHIPPING—OMISSION OF CARGO FROM MANIFEST—PENALTY.
   A propeller wheel and a case of ferrules were laden upon a steamship at New Orleans for export to Truxillo, Honduras, but the ship instead of going to Truxillo went into dry dock on the opposite side of the river, where the wheel and ferrules were placed upon the vessel as part of her machinery and motive power, and still remain there. The trip to Truxillo was abandoned, and the vessel afterwards cleared for La Ceiba, no mention being made in her manifest of the propeller wheel and ferrules. *Held,* that this omission was proper, and the ship was not liable for the penalty of $500 prescribed by Rev. St. § 4197, for omitting the cargo from the manifest.

2. CUSTOMS DUTIES—WITHDRAWAL FOR EXPORT — BREACH OF EXPORT BOND—
   AMOUNT RECOVERABLE.
   Rev. St. § 2979, requires an importer, on withdrawing goods for re-export, to give to the collector "satisfactory security" that the merchandise shall be landed out of the United States. The treasury department regulations (article 587) provide that, in cases of withdrawal for export, the exporter shall give bond "with satisfactory security in a penal sum equal to double the amount of the estimated duty on the goods." *Held,* that an export bond given in the sum of $1,000, without containing any reference to the amount of estimated duties on the goods withdrawn, was valid; and that the government was entitled, upon breach of the condition, to recover the whole amount of the bond, and was not limited to a judgment for double the amount of duties as subsequently estimated. Speake v. U. S., 9 Cranch, 28, applied.

Appeal from the District Court of the United States for the Eastern District of Louisiana.

In Error to the District Court of the United States for the Eastern District of Louisiana.

These were two suits growing out of an alleged violation of the shipping and customs laws. No. 259 was a libel in admiralty, filed by the United States against the steamship S. Oteri, Mrs. Valensona claimant, to recover a penalty of $500 for an alleged violation of Rev. St. § 4197, by the omission from her manifest of a propeller wheel and a case of ferrules, which were withdrawn from warehouse at New Orleans for re-export under the customs laws and regulations. In this case the district court held that the omission was a proper one, and therefore dismissed the libel. The United States appealed. No. 260 was an action at law against Salvador Oteri and D. R. Noble, upon a bond given under Rev. St. § 2979, in the penal sum of $1,000, to secure the export and landing, outside of the United States, of the propeller wheel and case of ferrules above mentioned. A jury was waived, and the case tried to the court, which found that the condition of the bond had been broken, and entered judgment against defendants for $180.39, with interest, being the amount of duties estimated to be due upon those articles. From this judgment the United States bring error, claiming that it should have been for the full amount of the bond. The bond is here set out in full:

"$500.00                    Exportation Bond.                    No. 1,329

"Know all men by these presents that we, Salvador Oteri, of the city of New Orleans, merchant, as principals, and D. R. Noble, as sureties, are held and firmly bound unto the United States of America in the sum of one thousand dollars, for the payment whereof to the United States we bind ourselves, our heirs, executors, administrators, and assigns, jointly and severally, firmly by these presents. Witness our hands and seals, at the port of New Orleans, this first day of April, eighteen hundred and ninety-two. Whereas, the following described merchandise having been heretofore duly imported into the United States, and entered for warehousing in bond, and having been so warehoused at the above-named port, according to law, hath been this day entered for withdrawal and exportation in bonds, viz.:

| "Marks. | Numbers. | Description of Packages and Merchandise. |
|---------|----------|-------------------------------------------|
| H | 1 | 1 propeller wheel. |
| Oteri | 2 | 1 case ferrules. |

" 'District and port of New Orleans.

" 'Collector's office, March 7th, 1893.

" 'I hereby certify the foregoing to be a true copy of the record on file at this office.

" '[Signed]                              J. D. Crawford.
                    " 'Dy. Collector, S-S Astronomer, L'pool.'

—Which said merchandise is also described in an export entry of this date, numbered 2273, and is to be exported in the S-S S. Oteri, whereof De Luca is at present master, now lying in the above named port, and bound for the port of Truxillo, Hond.; and whereas, it is intended that the said merchandise shall be exported as aforesaid, under and by virtue of the several laws of the United States relating to the exportation of imported goods without the payment of duties thereon. Now, therefore, the condition of this obligation is such that if the aforesaid merchandise shall, in good faith, be actually exported and landed abroad, according to the true intent and meaning of these presents, and shall not, nor any part thereof, be relanded at any port or place within the limits of the United States; and if the certificates and other proofs required by law and the regulations of the secretary

of the treasury, showing the delivery of the same at the said port of destina. tion, or any other port or place without the limits of the United States, shall be produced and deposited with the collector of customs for the time being at the said port of withdrawal within twelve months from the date hereof, —then this obligation to be void; otherwise to remain in full force and virtue.

"[Signed]                                                          pp. S. Oteri,
"[Signed]                                              E. M. Stella, 23 Front St.
"[Signed]                              D. R. Noble, Washington House, N. O.
  "Signed, sealed, and delivered in the presence of
    "[Signed]                                            S. Livaudais."

## Further facts are stated by the court as follows:

The above-entitled cases, the first being a suit in admiralty to recover a penalty for failure to place certain exported goods on the manifest of the steamship S. Oteri, and the second an action at law to recover the amount stipulated as a penalty in an exportation bond, were both tried in the district court, jury being waived, on the following admitted state of facts:

"It is admitted, as shown by the evidence filed in the record in both cases 13,021, United States v. Steamship S. Oteri, and in No. 13,026, United States v. Salvador Oteri, that the propeller wheel and a case of ferrules were laden on board the steamship S. Oteri for export to Truxillo, Honduras, April 4, 1892; that on the production of the bill of lading in the record, and the certificate of lading by the customs inspector, the export bond was canceled under the regulations then existing. It is admitted that the steamship S. Oteri, instead of going to Truxillo, went over the river from her wharf to the dock on the Algiers side of the city and port of New Orleans; that said vessel went on the dock April 8, 1892, and came off April 12, 1892, abandoning her trip to Truxillo. During this time the propeller wheel and ferrules had been placed on said vessel as a part of her machinery and motive power, and still remain there. That same were not exported, notwith-standing the bill of lading and cancellation of the bond. It is admitted that the invoice in the records shows that the wheel was made under contract for this S. S. S. Oteri, and imported for the use of said vessel, and is now so used; never having been placed on said vessel in a foreign port, or never having paid the duties, never having been exported in bond. It is admitted that $500 is deposited with the collector of port of New Orleans, under protest, to cover the penalty. It is admitted that after the said vessel came from the dock said vessel cleared May 6, 1892, for La Ceiba, in ballast and ship stores, no mention being made of the propeller wheel and ferrules. It is admitted that this manifest was correct, in so far as it made no mention of said wheel and ferrules as freight, for the reason that said wheel and ferrules were placed on said vessel while in the dock as stated above, as a part of her motive power. It is admitted that the said steamship S. Oteri is a foreign-built vessel, and that all the patterns of her machinery and pieces of her machinery are held at the place of her construction, viz. a foreign port or place. It is agreed that the record evidence in both cases shall apply and be used in either."

### "No. 13,026 v. Salvador Oteri. District Court.

"Duties on one propeller shaft, value £95, $462, weight three tons, 16 cwt., or 8,512 lbs.

"Valued four cents, and not above seven cents, say two cents per lb.

"Duty, $170.24.

On ferrules, wood..................[in pencil]...................$170 24
£6-29, 35 per cent., $10.15......................................  10 15

                                                                  ─────────
                                                                  $180 39"

"It is agreed by F. B. Earhart, United States attorney, and Gurley & Mel-len, attorneys and proctors for defendants in the above entitled and num-

bered case, that the foregoing is a correct estimate of the customs duties which could be imposed on the propeller shaft and ferrules described in the record herein, if same were imported in the United States."

F. B. Earhart, U. S. Atty.

J. Ward Gurley, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

PARDEE, Circuit Judge (after stating the facts). As these cases were tried in the district court on the same state of facts, and were heard together in this court, we dispose of them together. The admitted facts show that the propeller and box of ferrules, which it is alleged were omitted from the manifest of the Oteri, formed no part of the cargo on the voyage of that ship as actually made; the contemplated voyage to Truxillo—for which, by the way, the record shows neither clearance nor manifest—having been abandoned, and before another voyage was made the said propeller and box of ferrules were, in the port of New Orleans, applied to the purpose for which originally intended, and thereafter and on the voyage to Ceiba actually made and formed part and parcel of the ship itself. If, on the clearance of the ship for Ceiba, the propeller and box of ferrules had been placed upon the manifest as part of the cargo, as it is claimed by the United States should have been done, the manifest would have been false and untrue.

In the suit for the amount of the penalty in the export bond the answer of the defendants should be noted. It is a general denial, except as therein admitted, to wit, the giving and signing of the bond substantially set forth in the petition, and "averring that the defendants have kept and complied with all the conditions and obligations thereof, and that the same has long since been discharged, and that the said bond was duly canceled according to law on the 31st day of May, 1892, and that said bond has no longer any force or effect, and the conditions thereof are fully satisfied." And it is to be further noted that no suggestion of duties due the United States secured by the export bond in question comes into the case until on the trial a supplementary agreement of facts is filed, showing what would be a correct estimate of the customs duties which could be imposed on the propeller shaft and the ferrules described in the record, if the same were imported into the United States.

In this court the first question presented is as to the real amount of the bond sued on, if valid at all. Section 2979 of the Revised Statutes of the United States provides:

"That the owner, importer, consignee or agent * * * shall give to the collector satisfactory security that the merchandise shall be landed out of the jurisdiction of the United States in the manner required by law relating to exportations for the benefit of drawbacks."

See, also, Rev. St. § 3043.

The regulations of the treasury department, in force at the time the bond in the suit was executed, direct that:

"In cases of withdrawal for export, the exporter shall give bond, with satisfactory security, in a penal sum equal to double the amount of the estimated duties on the goods, to produce the proof required by law of the landing of the same beyond the limits of the United States." Treasury Regulations, art. 587.

Under the statute cited, and the regulation in pursuance thereof, it is suggested that the amount of the penalty in the case in hand must be taken as not in excess of double the amount of the estimated duties on the goods exported, and that in no event can a larger sum be recovered as penalty in this suit.

The contention of the appellee in this behalf seems to be disposed of by Speake v. U. S., 9 Cranch, 28–36, which was a suit on an embargo bond, where the statute required that the amount of the bond should be in a sum double the value of the vessel and cargo, and the court says:

"The second joint plea of the defendants alleges that the bond was not taken pursuant to the act of congress, but contrary thereto, in this: that the bond was taken in a sum more than double the value of the vessel and cargo, whereby the bond became void. On demurrer to this plea and joinder in demurrer, the court below gave judgment for the United States, and we are of opinion that the judgment so given ought to be affirmed. There is no allegation or pretense that the bond was unduly obtained by the collector, colore officii, by fraud, oppression, or circumvention. It must therefore be taken to have been a voluntary bona fide bond. The value was a matter of uncertainty, and the ascertaining of that value was the joint act and duty of both parties. When once that value was ascertained and agreed to by the parties, and a bond executed in conformity to such agreement, the parties were estopped to deny that it was not the true value. If an issue had been taken upon the fact, the evidence on the face of the bond would have been conclusive to the jury; and, if so, it is not less conclusive upon demurrer. It would be dangerous in the extreme to admit parties to avoid a sealed instrument, by averring that there was an error in the value, by an innocent mistake, or by accident, or by circumstances against which no human foresight could guard. A mistake of one dollar would be as fatal as of ten thousand dollars. Suppose the double value were underrated, could the United States avoid the bond, and thereby subject the party to the penalties of the third section? Where the law provides that the penal sum of a bond shall be equal to the double value, and the parties, voluntarily, and without fraud, assent to the insertion of a given sum, it is as much an estoppel as if the bond had specially recited that such sum was the double value."

The validity and penal amount of the bond in this case being beyond question, our next inquiry is as to the amount of damages the United States is entitled to recover upon the breach thereof.

In the twenty-sixth section of the judiciary act of 1789 (now section 961, Rev. St.) it is provided:

"That in all causes before either of the courts of the United States to recover the forfeiture annexed to any articles of agreement, covenant, bond or other speciality, where the forfeiture, breach or nonperformance shall appear by the default or confession of the defendant, or upon demurrer, the court before whom the action is, shall render judgment therein for the plaintiff to recover so much as is due according to equity. And when the

sum for which judgment should be rendered is uncertain, the same shall, if either of the parties request it, be assessed by a jury."

The rule declared by this statute is to be generally applied in proper cases in the courts of the United States. If applied here, the question is, how much is due, according to equity, under the conceded breach of the bond? An examination of the bond shows that it is not a bond to secure the payment of any sum for duties or otherwise. The only reference in the bond to the subject of duties is the recital:

"It is intended that said merchandise shall be exported as aforesaid, under and by virtue of the laws of the United States relating to the exportation of imported goods without the payment of duties thereon."

The record as made by the bond shows only a description of the packages of merchandise withdrawn, without any statement of value or any estimate of duties due, or, in any event, to become due. The bond is conditioned to secure the exportation of the merchandise in question beyond the United States, and its evident purpose, under the statute and the treasury regulations, is to prevent frauds upon the revenue. The admitted facts of this case show that the obligors did not export the merchandise beyond the United States, but permitted the same to be landed in the United States, and thereby a fraud on the government revenues resulted; and this not by mistake or error, for nearly 60 days after the merchandise was landed in the United States, and when the parties well knew that the bond had been breached, the nonaccomplished export bill of lading was produced to the collector of customs, and under an erroneous interpretation of a treasury regulation, that officer was induced to enter a cancellation of the bond, and nearly one year seems to have elapsed before the government agents discovered that in the transaction the revenues had been defrauded.

If we are correct in treating the bond sued on as one in no respect given to secure the payment of duties or any other debt due the United States, but as a bond authorized and required by the statute and the treasury regulations for the purpose of preventing fraud on the revenues,—and we are unable to discover any other purpose for it,—we are of opinion that the said bond is not one in which equity, under the facts admitted, can relieve the obligors from payment of the full penalty stipulated. This conclusion is warranted by the opinion of the supreme court of the United States in Clark v. Barnard, 108 U. S. 436 et seq., 2 Sup. Ct. 878, in which the authorities are fully reviewed.

The defendants in error contend that this case is identical with, and governed by, the same principles as U. S. v. Cutajar, 59 Fed. 1002, decided by Judge Brown in the Southern district of New York, and now said to be on appeal in the United States circuit court of appeals, Second circuit. In that case the learned judge in his opinion says:

"This case is distinguishable from the considerably large class of cases to which the counsel for the government has directed my attention, and

which he has so clearly presented, namely, those in which the amount named in the bond is treated as a liquidated sum, to be paid in lieu of damages which are incapable of exact estimate. This case does not fall within that class. The context of the bond, the general purpose for which it was given, and the way in which the amount of the bond in such cases is fixed, are such as, taken together, require the amount named in the bond to be regarded as fixing, not an amount of liquidated damages, but only the extent of the importer's liability."

So we distinguish this case from the Cutajar Case in this: That the bond there sued on was a bond for the evident purpose of securing the full payment of duties on imported goods, and only incidentally, if at all, for the purpose of preventing frauds on the revenue, while here the purpose of the bond was not to secure the payment of duties or any other sum, but was to prevent frauds on the revenue. The decree of the district court in the first-entitled case, United States, Appellants, v. Mrs. Valensona, Claimant, Appellee, should be affirmed; and the judgment of the district court in the second-entitled case, United States, Plaintiffs in Error, v. Salvador Oteri and D. R. Noble, Defendants in Error, should be reversed, and said cause remanded, with instructions to enter a judgment in favor of the United States for the full amount of the penalty of the bond sued on; and it is so ordered.