NORTHERN COMMERCIAL CO. v. BRENNEMAN, United States Marshal.

(Circuit Court of Appeals, Ninth Circuit. July 7, 1919.)

No. 3277.

INTOXICATING LIQUORS ⊜247—FORFEITURE—ILLEGAL POSSESSION—ALASKA PROHIBITION ACT.

Under Act Feb. 14, 1917 (Comp. St. 1918, §§ 3643b–3643r), making it unlawful after January 1, 1918, to have in possession or to transport in Alaska any intoxicating liquors, and providing that no property right shall exist in such liquors, but that the same are forfeited to the United States and subject to seizure and destruction, liquors in possession of a common carrier in Alaska on or after that date, although in course of shipment in interstate commerce, are subject to seizure and forfeiture.

Appeal from District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Action by the Northern Commercial Company against R. F. Brenneman, United States Marshal for the Third Judicial Division of Alaska. Judgment for defendant, and plaintiff appeals. Affirmed.

McGowan & Clark, of Fairbanks, Alaska, and Lyons & Ritchie, of Valdez, Alaska, for appellant.

William A. Munley, U. S. Atty., of Valdez, Alaska, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The sole question involved in this case is the legality of the seizure for confiscation by the United States marshal of certain intoxicating liquors, at the time being in continuous transport by common carriers from the town of Fairbanks, in the territory of Alaska, to San Francisco, Cal., having been shipped in December,

1917, by the appellant, then the owner and lawfully possessed of them, from Fairbanks to San Francisco, to a consignee there which had agreed to purchase the same from the appellant. The liquors were due to arrive at Cordova, Alaska, in the course of their transportation by the common carriers, prior to December 29, 1917, and were to be carried by ship from that port on that day to San Francisco; but the ship which was to receive them at Cordova and continue their carriage to destination did not reach Cordova until January 2, 1918, resulting in their seizure by the marshal, appellee here, January 1, 1918, or immediately thereafter.

By section 14 of the act of May 17, 1884, providing a civil government for Alaska (23 Stat. 24, 28, c. 53), it was enacted that:

"The importation, manufacture and sale of intoxicating liquors in said district except for medicinal, mechanical, and scientific purposes is hereby prohibited under the penalties which are provided in section 1955 of the Revised Statutes for the wrongful importation of distilled spirits. And the President of the United States shall make such regulations as are necessary to carry out the provisions of the section."

By section 1955 of the Revised Statutes the President was given—

"power to restrict and regulate or to prohibit the importation and use * * * of distilled spirits into and within the territory of Alaska, * * * and any person willfully violating such regulations shall be fined not more than $500, or imprisoned not more than six months."

By executive order of May 4, 1887, the landing of intoxicating liquors at any port or place in the territory was prohibited, except upon a permit of the chief officer of the customs at such port or place, to be issued upon evidence satisfactory to such officer that the liquors were imported and to be used for sacramental, medicinal, mechanical, and scientific purposes. By executive order of March 12, 1892, their sale for medicinal, mechanical, and scientific purposes could be made only by such persons in the territory as should have obtained a special permit from the Governor of the territory to sell them therein upon certain specified conditions. Endleman v. United States, 86 Fed. 457, 30 C. C. A. 186.

By the Penal Code of that territory of March 3, 1899, as subsequently amended and embraced in its Compiled Laws, the above-mentioned statutes and orders were repealed and the following provisions enacted:

"Sec. 2569. That any person or persons, corporation, or company prosecuting or attempting to prosecute any of the following lines of business within the district of Alaska shall first apply for and obtain license so to do from a district court or a subdivision thereof in said district, and pay for said license for the respective lines of business and trades as follows, to wit: [Enumerating various classes of business and the amounts to be paid per annum.]"

The next section provided a penalty for doing business in violation of the provisions of section 2569 just quoted. Section 2571 of the same statutes provided as follows:

"That no person, corporation, or company shall sell, offer for sale, or keep for sale, traffic in, barter, or exchange for goods in said district of Alaska any intoxicating liquors, except as hereinafter provided; but this shall not apply to sales made by a person under provisions of law requiring him to sell

personal property. Wherever the term 'intoxicating liquors' is used in this act, it shall be deemed to include whisky, brandy, rum, gin, wine, ale, porter, beer, hoochinoo and all spirituous, vinous, malt or other fermented or distilled liquors."

And subsequent sections of the same statutes provided for the issuing of licenses and the proceedings to be taken therefor. Subsequently, and the day before the seizure here in question, there went into effect what is called in the record the "Bone-Dry Law," enacted by Congress February 14, 1917 (39 Stat. 903, c. 53 [Comp. St. 1918, §§ 3643b–3643r]), under the title "An act to prohibit the manufacture or sale of alcoholic liquors in the territory of Alaska, and for other purposes."

The first section of that act (Comp. St. 1918, § 3643b) declared, among other things, that on and after the 1st day of January, 1918, it should be "unlawful for any person, house, association, firm, company, club, or corporation, his, its or their agents, officers, clerks, or servants, to manufacture, sell, give, or otherwise dispose of any intoxicating liquor or alcohol of any kind in the territory of Alaska, or to have in his or its possession or to transport any intoxicating liquor or alcohol in the territory of Alaska, unless the same was procured and is possessed and transported" as therein specifically provided, which specific provisions are inapplicable to the present case. Other provisions of the act authorized the transportation of pure alcohol for scientific, artistic, or mechanical purposes or for compounding or preparing medicines, or for sacramental purposes, upon securing the prescribed permit and conforming to other prescribed requirements. Sections 13, 14, 23, and 29 thereof are as follows:

"Sec. 13. That it shall be unlawful for any person owning leasing, or occupying or in possession or control of any premises, building, vehicle, car, or boat to knowingly permit thereon or therein the manufacture, transportation, disposal, or the keeping of intoxicating liquor with intent to manufacture, transport, or dispose of the same in violation of the provisions of this act." Comp. St. § 3643h.

"Sec. 14. That it shall be unlawful for any person to import, ship, sell, transport, deliver, receive, or have in his possession any intoxicating liquors, except as in this act provided." Comp. St. § 3643hh.

"Sec. 23. That no property right of any kind shall exist in alcoholic liquors or beverages illegally manufactured, received, possessed, or stored under this act, and in all such cases the liquors are forfeited to the United States and may be searched for and seized and ordered to be destroyed by the court after a conviction, when such liquors have been seized for use as evidence, or upon satisfactory evidence to the court presented by the district attorney that such liquors are contraband." Comp. St. § 3643m.

"Sec. 29. That any person, company, or corporation who shall import or carry liquors into or upon the territorial waters of Alaska in or upon any steamship, steamboat, vessel, boat, or other water craft, or shall permit the same to be so imported or carried into or upon said waters, except under the provisions of this act, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section one of this act." Comp. St. § 3643p.

The complaint in the action, to which a demurrer was sustained, resulting in a judgment dismissing the action (the plaintiff having declined to plead further), shows that at the time of the shipment in question the plaintiff was the legal owner and possessor of the liquor

which it shipped from Fairbanks, Alaska, consigned to the Crown Distilleries Company at San Francisco, Cal., which company had contracted to purchase it; the shipment being made by way of Chitina and Cordova, Alaska, and being carried from Chitina to Cordova by the Copper River & Northwestern Railroad, by which road it was to be delivered at Cordova to its connecting carrier for delivery at its final destination in San Francisco, Cal. The liquor was therefore interstate commerce, in the possession and control of interstate carriers, at the time of its seizure by the government officer, and the question for decision is whether the act of Congress of February 14, 1917, authorized the seizure and for the purpose stated.

As has been shown, by its first section it is expressly declared, among other things, that on and after the 1st day of January, 1918, it shall be unlawful for any person, company, or corporation, his, its, or their agents, etc., to have in his, its, or their possession in Alaska any intoxicating liquor, or to transport or otherwise dispose of the same, except under conditions not here applicable, and by section 14 that it shall be unlawful for any person to ship, transport, deliver, receive, or have in his possession any such liquor (with certain exceptions also inapplicable to the present case), with the further provision in section 23 that no property right of any kind shall exist in alcoholic liquors or beverages illegally received, possessed, or stored, as provided in and by that act, and that in all such cases such liquors are forfeited to the United States and subject to seizure and destruction.

In view of those clear and unmistakable provisions of the statute, we are unable to sustain the contention of the appellant that the court was in error in sustaining the demurrer to the complaint. We have not overlooked the decision of the Supreme Court in the recent case of United States of America, Plaintiff in Error, v. Homer Gudger (April 14, 1919) 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653. The indictment in that case was based upon that provision of the act of Congress of March 3, 1917 (39 Stats. 1058, c. 162), entitled "An act making appropriations for the service of the Post Office Department for the fiscal year ending June thirtieth, nineteen hundred and eighteen, and for other purposes," which reads:

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce except for scientific, sacramental, medicinal, and mechanical purposes, into any state or territory the laws of which state or territory prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes, shall be punished" as therein provided. Section 5 (Comp. St. 1918, § 8739a).

The facts there were that the defendant to the indictment was a passenger on a railroad train from Baltimore, Md., to Asheville, N. C., and had in his valise on board the car several bottles of whisky, which were found by an officer while the train was temporarily stopped at the railroad station in Lynchburg, Va., which state prohibits the manufacture or sale therein of intoxicating liquors for beverage purposes. The court, in effect held it to be clear that the law of Virginia, prohibiting the manufacture or sale therein of intoxicating liquors for beverage purposes, had no application to the movement of

such liquors in interstate commerce through such state. The statute which was the basis of that decision being wholly unlike the statute here involved, that decision has no bearing upon the present case.

The judgment is affirmed.