UNITED STATES v. SISCHO.

(District Court, W. D. Washington, N. D. November 22, 1919.)

No. 4038.

1. STATUTES ⟨key⟩194—RULE OF CONSTRUCTION OF EJUSDEM GENERIS.

The rule of construction known as "ejusdem generis" is that general and specific words, which are capable of analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general (citing Words and Phrases, Ejusdem Generis.)

2. WORDS AND PHRASES—"EXPORTS AND IMPORTS."

The words "exports and imports," used in the federal Constitution, apply only to property.

3. WORDS AND PHRASES—"EXPORTS AND IMPORTS."

The words "exports and imports" cannot apply to a dead human body.

4. CUSTOMS DUTIES ⟨key⟩130—FORFEITURE ON IMPORTATION OF PROHIBITED GOODS.

Prohibited goods are ipso facto forfeited by the fact of importation.

5. CUSTOMS DUTIES ⟨key⟩129—COLLECTION OF PENALTY FOR UNLAWFUL INTRODUCTION OF SMOKING OPIUM; "MERCHANDISE."

In an action under Act June 22, 1874, § 15 (Comp. St. § 5803), to collect a penalty imposed by the Customs Department under Rev. St. § 2809 (Comp. St. § 5506), against one who unlawfully brought into the United States smoking opium, held, in view of Comp. St. §§ 8800, 8801, forbidding the importation of smoking opium, as well as sections 6287a and 6287b, and Act June 22, 1874, § 4 (Comp. St. § 5798), defining smuggling, smoking opium is not "merchandise," within Rev. St. § 2766 (Comp. St. § 5462), defining merchandise as including goods, wares, and chattels of every description capable of being imported, for it is an outlaw drug, hence the penalty described by section 2809 is inapplicable.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Merchandise.]

**6.** CUSTOMS DUTIES ⊂⊃129—COLLECTION OF PENALTY FOR UNLAWFUL IMPORTATION OF SMOKING OPIUM.

As smoking opium is a prohibited thing, and could have no market value in the United States, defendant, who smuggled into the United States smoking opium from British Columbia, where its sale was also forbidden, cannot be required to pay the penalty prescribed by Rev. St. § 2809 (Comp. St. § 5506), against the master of vessels who bring in merchandise without manifesting the same, etc., for the penalty is under the section based on the value of the merchandise so brought in.

**7.** STATUTES ⊂⊃163—IMPLIED REPEAL OF GENERAL STATUTE BY SPECIAL STATUTE.

The enactment of a special statute repeals and takes the subject out of a general statute, which otherwise might include the particular subject-matter dealt with in the special statute.

**8.** STATUTES ⊂⊃188—INTERPRETATION ACCORDING TO INTENT.

Interpretation of a statute should be not according to the letter of the statute, but according to the intent as gathered from all parts of the law.

**·9.** STATUTES ⊂⊃183—CONSTRUCTION ACCORDING TO INTENT.

The letter of a statute should not be followed, if it will produce an absurd result, or if a more reasonable meaning presents itself.

**10.** STATUTES ⊂⊃228—OFFICE OF PROVISO.

The usual office of a proviso in a statute is to except something which otherwise would fall within its scope.

**11.** STATUTES ⊂⊃239—CONSTRUCTION WITH REFERENCE TO COMMON LAW.

Statutes are construed with reference to the common law; so, in construing statutes in derogation of common law, there should be no greater departure than the statute expressly declares.

**12.** CUSTOMS DUTIES ⊂⊃129—PENALTIES FOR IMPORTATION OF SMOKING OPIUM.

Comp. St. § 8801f, declaring that whenever opium, cocaine, or any preparations or derivatives thereof, shall be found on any vessel at any port of the United States, which is not shown on the vessel's manifest as required, such vessel shall be liable for the penalty and forfeiture prescribed by Rev. St. & 2809 (Comp. St. § 5506), does not include smoking opium, for it cannot be considered a preparation or derivative of opium, as the importation of smoking opium is forbidden, and in view of the penalties prescribed for the smuggling of smoking opium into the United States.

At Law. Action by the United States against Wesley L. Sischo. Judgment for defendant.

Robert C. Saunders, U. S. Atty., and Miss Charlotte Kolmitz, Asst. U. S. Atty., both of Seattle, Wash.

Daniel Landon, of Seattle, Wash., for defendant.

CUSHMAN, District Judge. The defendant, Wesley L. Sischo, was tried for a violation of Act Feb. 9, 1909, as amended January 17, 1914 (section 8801, Comp. St.), convicted, sentenced, and is now serving a term of years in the penitentiary for smuggling opium prepared for smoking from British Columbia into the United States. The opium and the boat in which it was smuggled have been forfeited. The Customs Department under section 2809, R. S. (section 5506, Comp. St.), imposed a penalty of $6,400 upon the defendant, and this suit was begun under section 15 of Act June 22, 1874 (section 5803, Comp. St.), upon the report of the collector, and a writ of attachment issued against a Marmon automobile, the property of this defendant, to satisfy the said penalty.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complaint or libel of the government describes the importation as "certain merchandise denied importation into the United States, to wit, one hundred (100) five-tael tins of opium, prepared for smoking purposes, the same not being on any manifest or included or described in the manifest," and alleges that the value of such merchandise was $6,400. The answer of the defendant denies the allegations of the libel, and specifically denies that the so-called merchandise was worth the sum of $6,400, or any sum whatever.

A trial has been had, upon which the government produced testimony regarding the value, in this country, of morphine, and showed that the opium brought in by Sischo could be converted into morphine. There was no evidence as to the cost of such conversion. Other testimony was introduced as to what price was paid in British Columbia for such opium. The laws of British Columbia, as our own, prohibit any importation or traffic in such opium. Further testimony was given regarding the price paid for opium in China, Mexico, and Macao, a Portuguese colony near China.

Section 2809, R. S. (2 Fed. St. Ann. 647; section 5506, Comp. St.), provides:

"If any merchandise is brought into the United States in any vessel whatever from any foreign port without having such a manifest on board, or which shall not be included or described in the manifest, or shall not agree therewith, the master shall be liable to a penalty equal to the value of such merchandise not included in such manifest; and all such merchandise not included in the manifest belonging or consigned to the master, mate, officers, or crew of such vessel, shall be forfeited."

This section is contained in the Customs Revenue Act of March 2, 1799 (1 Stat. 646, c. 22, § 24).

"The word 'merchandise,' as used in this title, may include goods, wares, and chattels of every description capable of being imported." Section 2766, R. S. section 5462, Comp. St.)

Section 15 of the act of June 22, 1874 (an act entitled "An act to amend the customs revenue laws and to repeal moieties"), provides:

"That it shall be the duty of any officer or person employed in the customs revenue service of the United States, upon detection of any violation of the customs laws, forthwith to make complaint thereof to the collector of the district, whose duty it shall be promptly to report the same to the district attorney of the district in which such frauds shall be committed. Immediately upon the receipt of such complaint, if, in his judgment, it can be sustained, it shall be the duty of such district attorney to cause investigation into the facts to be made before a United States commissioner having jurisdiction thereof, and to initiate proper proceedings to recover the fines and penalties in the premises, and to prosecute the same with the utmost diligence to final judgment." 18 Stat. 189 (section 5803, Comp. St.).

The statutes further provide:

"After the first day of April, nineteen hundred and nine, it shall be unlawful to import into the United States opium in any form or any preparation or derivative thereof: Provided, that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for smoking, may be imported for medicinal purposes only, under regulations which the Secretary of the Treasury is hereby authorized to prescribe, and when so imported shall be subject to the duties which are now or may hereafter be imposed by law." Section 8800, Comp. St.

"If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any opium or any preparation or derivative thereof contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such opium or preparation or derivative thereof after importation, knowing the same to have been imported contrary to law, such opium or preparation or derivative thereof shall be forfeited and shall be destroyed, and the offender shall be fined in any sum not exceeding $5,000 nor less than $50 or by imprisonment for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have, or to have had, possession of such opium or preparation or derivative thereof, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury." Section 8801, Comp. St.

"Whenever opium or cocaine or any preparations or derivatives thereof shall be found upon any vessel arriving at any port of the United States which is not shown upon the vessel's manifest, as is provided by sections twenty-eight hundred and six and twenty-eight hundred and seven of the Revised Statutes, such vessel shall be liable for the penalty and forfeiture prescribed in section twenty-eight hundred and nine of the Revised Statutes." Section 8801f, Comp. St.

A tax of $300 per pound is levied upon opium manufactured in the United States for smoking purposes, and a minimum bond of $100,000 is required of the manufacturer (sections 6287a and 6287b, Comp. St.); but all opium prepared for smoking is denied importation (sections 8800 and 8801, Comp. St.).

Section 4 of the act of June 22, 1874 (section 5798, Comp. St.), defines smuggling as—

" * * * The act, with intent to defraud, of bringing into the United States, or, with like intent, attempting to bring into the United States, dutiable articles without passing the same, or the package containing the same, through the custom house, or submitting them to the officers of the revenue for examination."

[1-5] To justify a judgment for the penalty for which suit is brought, three things are necessary:

(1) That section 2809, R. S., was intended to cover prohibited articles— things denied admission to the United States—as well as legitimate articles of commerce brought into the United States in an unauthorized manner; that is, not manifested as required by law.

(2) That imported opium prepared for smoking purposes falls within the description of "goods, wares or merchandise," as the same are used in customs duty laws and section 2809, R. S.

(3) That such opium is an article of merchandise of value and that the value has been shown.

The decisions as to the rule of construction of provisions for forfeiture and penalties are not in accord. Certain courts have held that they are highly penal; others hold them remedial in character; but, even by the latter class, as well as the former, the case must be brought, not only within the letter, but the spirit, of the statute. 12 Cyc. 1166, B, and 1167.

If the present case is not fairly within the provisions of section 2809, R. S., no cause arises for stretching that statute to cover it as an overlooked need. It is not casus omissus, for section 3082, R. S. (section 5785, Comp. St.), the general smuggling statute, and section 8801

(Comp. St.), the opium smuggling statute, being the statute under which the defendant was convicted, make provision, not only for imprisonment and fine, but forfeiture as well.

Customs laws pertain to that part of commerce that has to do with property, its exchanges and movements. "Customs duties" is the name given to taxes on the importation and exportation of commodities (Webster's Dictionary); the tariff or tax assessed upon merchandise imported from, or exported to, a foreign country (Standard Dictionary).

What is condemned by section 2809, R. S., is nonmanifested merchandise. Webster defines "merchandise" as "whatever is usually bought or sold in trade or market or by a merchant." "Commodity" is defined as an article of trade; a movable article of value; something that is bought and sold. Standard Dictionary. "Merchandise" is anything customarily bought and sold for profit. Standard Dictionary. For "capable" Webster gives as synonyms: "Susceptible; competent; qualified; fitting; possessing legal power or capacity." The word "chattels" is derived from the Norman French; its meaning being goods of every kind, every species of property movable, which is less than freehold. Bouvier (3d Ed.) vol. 1, p. 471.

If "capable of being imported" referred to, and was limited to, physically capable, Congress would have contented itself with saying personal chattels, for it would be ridiculous to think that Congress would have thought it necessary to exclude the impossible—the importation of chattels real. Opium lawfully brought into the United States is merchandise; but it does not, necessarily, follow that smoking opium, denied admission to the United States, is merchandise, considered either generally or as the word is used in section 2809, R. S.

The rule of construction, "noscitur a sociis," is particularly applicable and frequently resorted to in interpreting custom statutes. "Merchandise, goods, wares and chattels" are not used in an all-comprehensive sense, so as to include all movable things. These words as used in this statute, do not include ships themselves. 12 Cyc. 1132 (11); The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937.

The words "chattels capable of being imported," being used with the words "goods and wares," under the rule "noscitur a sociis," would limit their meaning to articles the subject of commercial transactions —lawfully the subject of such transactions. All laws regulating the payment of duties are, for practical application to commercial operations, to be considered in a commercial sense.

Merchandise may include every article of traffic, foreign and domestic, which is properly embraced in a commercial transaction; but it would not include imported slaves, although they were merchandise in a foreign state. Groves v. Slaughter, 40 U. S. (15 Pet.) 449, at pages 506 and 507, 10 L. Ed. 800.

The rule of construction of ejusdem generis is that general and specific words, which are capable of analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general. 3 Words and

Phrases, 2328; U. S. v. Baumgartner (D. C.) 259 Fed. 722, at page 725. So the words "merchandise and chattels," in these two statutes, take color from the words "goods and wares," and show that the things contemplated are such as are capable of entering into the commerce of the United States—things that can legally be bought and sold.

Section 5299, Comp. St., providing for the seizure and forfeiture of obscene books and articles, does not describe nor recognize them as "merchandise, goods or wares," but refers to such objects throughout as "articles," painstakingly designating them as such not less than seven times in this section. In Criminal Code, § 245 (Act March 4, 1909, c. 321, 35 Stat. 1138 [Comp. St. § 10415]), providing a punishment for the importation and transportation of obscene books and indecent things, they are not described as "merchandise," nor recognized as such, nor as "chattels," but are properly and accurately described as that which they legally are, "articles, matters, and things."

The words "exports and imports," as used in the Constitution, refer only to property. 12 Cyc. p. 1108, B, 5.

"The words 'inspection laws,' 'imports,' and 'exports,' as used in clause 2, § 10, art. 1, of the Constitution, have exclusive reference to property.

"This is apparent from the language of clause 1, § 9, of the same article, where, in regard to the admission of persons of the African race, the word 'migration' is applied to free persons, and 'importation' to slaves."

People v. Compagnie Gen. Transatlantique, 107 U. S. 59, 2 Sup. Ct. 87, 27 L. Ed. 383.

The words 'exports' and 'imports' cannot apply to a dead human body. In re Wong Yung Quy, 2 Fed. 624, 6 Sawy. 442. In the importation of smoking opium, under the laws as at present existing, there cannot properly be said to exist an intent to defraud the United States. There is no question of revenue, or loss of anything of value, involved. If the illegal importation of such opium—being absolutely prohibited—can be called the working of fraud upon the United States, then the commission of any crime can properly be so designated.

Section 15 of the act of June 22, 1874, the section under which this suit is brought, provides:

"That it shall be the duty of any officer or person employed in the customs revenue service of the United States, upon detection of any violation of the customs laws, forthwith to make complaint thereof to the collector of the district, whose duty it shall be promptly to report the same to the district attorney of the district in which such *frauds* shall be committed. Immediately upon the receipt of such complaint, if, in his judgment, it can be sustained, it shall be the duty of such district attorney to cause investigation into the facts to be made before a United States commissioner having jurisdiction thereof, and to initiate proper proceedings to recover the fines and penalties in the premises, and to prosecute the same with the utmost diligence to final judgment." Section 5803, Comp. St. (The italics are those of the court.)

Section 16 of the same act provided:

"That in all actions, suits, and proceedings in any court of the United States now pending or hereafter commenced or prosecuted to enforce or declare the forfeiture of any goods, wares, or merchandise, or to recover the value thereof, or any other sum alleged to be forfeited by reason of any violation of the provisions of the customs-revenue laws, or any of such provisions, in which action, suit, or proceeding an issue or issues of fact shall have been joined,

it shall be the duty of the court, on the trial thereof, to submit to the jury, as a distinct and separate proposition, whether the alleged acts were done with an actual intention to defraud the United States, and to require upon such proposition a special finding by such jury; or, if such issues be tried by the court without a jury, it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact; and in such cases, unless intent to defraud shall be so found, no fine, penalty, or forfeiture shall be imposed." 18 Stat. 189.

Although section 16, directing the procedure, has been repealed, its provision requiring that the court, or jury, make a special finding as to whether there was actual fraud, the court, being called upon to construe section 15, should still look to section 16 to determine in what sense the word "frauds" is used in section 15. Section 15 contemplates that a violation of the letter of the statute may occur, without any intent to defraud the United States.

Prohibited goods are ipso facto forfeited by the fact of importation. 12 Cyc. 1171; McLane v. U. S., 31 U. S. (6 Pet.) 404, 8 L. Ed. 443; Anonymous, Fed. Cas. No. 470 (the importation in this case being pictures of a nature to corrupt the public morals); U. S. v. Jordan, Fed. Cas. No. 15,498.

It is not necessary to include goods not dutiable in a manifest. The S. Oteri, 67 Fed. 146, 14 C. C. A. 344. This has been expressly recognized by Congress in section 7810, Comp. St., which provides:

"Every yacht, except those of fifteen gross tons or under, visiting a foreign country under the provisions of sections forty-two hundred and fourteen, forty-two hundred and fifteen, and forty-two hundred and seventeen of the Revised Statutes shall, on her return to the United States, make due entry at the custom house of the port at which, on such return, she shall arrive: Provided, that nothing in this act shall be so construed as to exempt the master or person in charge of a yacht or vessel arriving from a foreign port or place with dutiable articles on board from reporting to the customs officer of the United States at the port or place at which said yacht or vessel shall arrive, and deliver in to said officer a manifest of all dutiable articles brought from a foreign country in such yachts or vessels."

Where, in violation of the Nonintercourse Law of the War of 1812, certain merchandise had been brought to the United States from Great Britain, it was said:

"In point of law, no duties, as such, can legally accrue upon the importation of prohibited goods. * * *" McLane v. U. S., 31 U. S. (6 Pet.) 404, at page 427 (8 L. Ed. 443).

In a very recent case in the Northern district of New York, Judge Ray has decided:

"The provision of Act Aug. 10, 1917, § 15 (Comp. St. 1918, § 3115⅛l), making it a criminal offense to import distilled spirits, punishable by fine or imprisonment or both, is not a customs law, but a prohibition law, enacted under the police power of Congress, and while the seizure and forfeiture as contraband of spirits so imported, though not specifically provided for, is essential to the effective enforcement of the law, the court cannot impose as an additional punishment the forfeiture of the vehicle used, under another statute" (a customs statute). U. S. v. 1 Ford Automobile and 14 Packages of Distilled Spirits (D. C.) 259 Fed. 894.

Attorney General Knox, in an opinion rendered the collector of customs at Port Townsend (29 Op. Attys. Gen. 603), holds that opium

prepared for smoking purposes is a nuisance per se, and quotes Freund on Police Power and Hipolite Egg Co. v. U. S., 220 U. S. 45, at pages 57 and 58, 31 Sup. Ct. 364, 55 L. Ed. 364, to the effect that smoking opium is fitted by nature to harm the community; that it is a menace belonging to the class of things that carry their own identification as contraband of law, which are outlaws of commerce; that, under Act Feb. 9, 1909, c. 100, 35 Stat. 614 (Comp. St. §§ 8800, 8801), opium prepared for smoking purposes is legally no longer classed with commercial imports, but is a prohibited thing, to be summarily condemned and destroyed—in effect, that it is not within the customs laws.

The Attorney General, in his recent opinion, referred to by Judge Ray, approves of and construes the opinion of Attorney General Knox as to the effect "that a violation of the law prohibiting the importation of smoking opium is not a violation of the customs laws." Section 2809, R. S., and section 15 of the act of June 22, 1874, under which the present suit is brought, are customs laws.

Property is a thing which is the subject of ownership. N. W. Mutual Life Ins. Co. v. Lewis County, 28 Mont. 484, 491, 72 Pac. 982, 98 Am. St. Rep. 572. Things capable of no use for lawful purposes are not property. Stanley-Thompson Liquor Co. v. People (Colo.) 168 Pac. 750. There is no right of property in Confederate notes. Murphy v. Denman, 18 La. Ann. 55. Opium prepared for smoking purposes is contraband. It is an outlaw, both under the laws of the United States and British Columbia.

The only reason that there was any question in Northern Commercial Co. v. Brenneman, 259 Fed. 514, —— C. C. A. ——, as to the right of forfeiture, was that interstate commerce was involved, and that there were purposes, other than for a beverage, for which alcoholic liquors could legally be used in Alaska. If such liquor had been contraband, and not legally usable for any purpose, section 23 of the act (Comp. St. 1918, § 3643m) considered by the court in that decision—providing that no property right shall exist in the alcoholic liquor—would be unnecessary. This provision of the law was evidently the result of abundant caution, and is the recognition of an existing rule of law, rather than the promulgation of a new one. Such alcoholic liquor could not be held a nuisance per se, for, under the statute, it could be intended for a lawful purpose. It became a nuisance because it was kept and intended for an unlawful purpose, for beverage purposes. Being of that character, something more was required than a mere inspection of the thing.

It is not so with opium prepared for smoking purposes. It is true that the use of opium prepared for smoking purposes is not prohibited directly, but its use is effectively prohibited by the punishing of one who receives it, and by its possession being made evidence of guilt. Opium prepared for smoking is not a deodand, customarily an innocent thing, that has become the instrument of doing a particular wrong. Such opium is, itself, a wicked thing, dangerous from the beginning and at all times to human welfare.

Property is the right a man has in a thing held, and openly used, or the thing itself, in which a man has, and can have a right the law will

protect—a thing in which it will protect the right of possession, not a forbidden thing he cannot even receive, and the bare possession of which is enough to send him to jail. Such a thing is not property. In a proceeding for forfeiture of opium prepared for smoking purposes, the only issue upon which a claimant would be heard would be whether or not the article was opium prepared for smoking purposes. If it was, it would stand forfeited, and no claim of right in it would avail. Therefore the necessities, if any, for a forfeiture proceeding, do not recognize an article as property.

It is well understood that the tax of $300 per pound on smoking opium of domestic manufacture is one of the means adopted to stamp out traffic in it, and is not intended as a recognition of even the domestic article as property. For smuggling opium there is a penalty provided of a fine not to exceed $5,000, or imprisonment of not to exceed two years. Section 8801, Comp. St. For a violation of the statute regulating domestic manufacture, there is a penalty of not less than $10,000, or imprisonment for not less than five years. Section 6287c, Comp. St.

The purpose to prohibit the domestic manufacture is clearly shown by the enormous tax levied and other burdens placed upon such business. Such a law was probably enacted to prevent the escape of an accused, in whose possession smoking opium was found, for the law against its importation provides two presumptions:

(1) That opium found in the United States is of foreign growth and manufacture.

(2) That the defendant, being shown to be in its possession, may be convicted, unless he satisfactorily explains that possession.

These presumptions are rebuttable. There is left an opportunity for a defendant found in such possession to contend that the smoking opium is of domestic manufacture; but, under the law authorizing its domestic manufacture, the restrictions and punishments being heavier than those for smuggling smoking opium of foreign manufacture, and possession of the domestic article affording a like presumption of guilt sufficient to sustain conviction, this act removes the temptation to attempt to evade punishment for smuggling by setting up the claim that the smoking opium is of domestic manufacture.

"It is well settled that things which are capable of no use for lawful purposes—and it is established that these instruments are of that class—are not the subject of property. They cannot be recovered in replevin, nor will damages be given for their loss or injury. They are, as some courts have said, 'outlaws.'" Stanley-Thompson Liquor Co. v. People (Colo.) 168 Pac. 750.

In Frost v. People, 193 Ill. 635, 61 N. E. 1054, it was held:

"Cr. Code. div. 8, providing that gaming apparatus may be seized and destroyed under the direction of the judge, justice, or court, is not unconstitutional because depriving persons of property without due process of law, such apparatus not being the lawful subject of property which the law protects."

In Mullen v. Mosely, 13 Idaho, 457, 90 Pac. 986, 12 L. R. A. (N. S.) 394 (121 Am. St. Rep. 277, 13 Ann. Cas. 450), the court said:

262 F.—64

"A 'slot machine,' incapable of use for any purpose except in violation of the penal provisions of the anti-gambling law, is not property within the meaning and protection of section 13, art. 1, of the state Constitution, which provides that 'no person shall * * * be deprived of life, liberty, or property without due process of law.' "

Miller v. C. & N. W. R. Co., 153 Wis. 431, 141 N. W. 263, 45 L. R. A. (N. S.) 334, Ann. Cas. 1914D, 632, held that, the use of a gambling device being prohibited by statute, there can be no recovery on account of its injury. In Board of Police Commissioners v. Wagner, 93 Md. 182, 48 Atl. 455, 52 L. R. A. 775, 86 Am. St. Rep. 423, it was held that replevin would not lie for the recovery of an outlawed article, a gambling device. State v. Soucie's Hotel, 95 Me. 518, 50 Atl. 709, held that a gambling device is noxious per se, and distinguishable from intoxicating liquors, which will be destroyed only when intended for an unlawful use or purpose. See, also, State v. Four Jugs of Intoxicating Liquor, 58 Vt. 140, 2 Atl. 586, and State v. Robbins, 124 Ind. 308, 24 N. E. 978, 8 L. R. A. 438.

[6] There is another question remaining that, other questions aside, would have to be determined in any event. To justify the imposition of a penalty under section 2809, R. S., the court must be able to measure the penalty in the case by the value of the imported thing. This value must be determined by a statutory rule or a common-law rule.

As smoking opium is a prohibited thing, it is not a thing of value. It is not an asset. It is a liability. Its value is minus. It is worth less than nothing. It can only do harm. In legitimate articles of commerce, the court may inquire at what price they are freely sold in the open market in the ordinary course; but it is inconceivable that the court will be guided by, and seek to ascertain, the ruling quotation for smoking opium as fixed by the furtive exchanges therein effected by criminals in the haunts of vice.

If it were a thing of value, the government would not destroy it. By condemning it to destruction, the government says that there is more harm than good in it; that the harm in it offsets the good, if any, and leaves a residuum of harm. The government does not destroy it as a house in the path of a fire may be destroyed—a good thing made harmful by particular circumstances. It is not destroyed as the skins of fur seals were once destroyed, to protect a monopoly given by the government. Opium prepared for smoking is destroyed because harm is of its essence—because it is malum in se.

Judge Dundy, of Nebraska, in an unreported decision rendered 30 or more years ago, held that, under the statute punishing a post office employé for embezzling a letter containing an article of value (section 5467, R. S. [section 10365, Comp. St.]), a prosecution could not be had for the embezzlement of a letter containing a Louisana lottery ticket, because the ticket was not a thing of value; its carrying being prohibited by the postal laws. This rule is amply supported by the cases collected in 25 Cyc. 1653, V, A, 2.

This being true in the case of a lottery ticket, which, under a prohibition law, one court at least has held not to be malum in se (Com-

monwealth v. Lottery Tickets, 5 Cush. [Mass.] 369), it follows a fortiori that imported opium prepared for smoking purposes, being malum in se, can have no value at common. law. Goods, wares, and merchandise are things of value, requiring and justifying expense to bring them to those who need them. Smoking opium is a thing that requires expense to keep it from its victims, and to prevent the innocent being exposed to the dangers that lurk in it.

There is no statute of the United States as to values and the method of determining them that is applicable. The only ones that can bear any analogy to the question are in the customs revenue laws. There have been many of these laws, and many sections are still in effect. They are too numerous to quote. An outline of the growth and trend of these laws is given in 12 Cyc. pp. 1141, 1142, and 1143. Running through all of them, in words or substance, are provisions that value shall be determined as the actual market value, or wholesale price, at the time of exportation to the United States in the principal markets of the country from which exported; that such actual market value is the price at which the merchandise is freely offered for sale to all purchasers in such markets, the price which the manufacturer or owner would have received for such merchandise, sold in the ordinary course of trade in the usual wholesale quantities.

The value in the country from which exported is the one looked to in all of these statutes. Sales of merchandise in British Columbia are the sole standard of value of exports from that country. Hence no consideration can be given to the testimony offered regarding values in China and other foreign countries than British Columbia. The sales shown in the latter country were all illicit sales. There can be no market value of an article which cannot be freely offered for sale; so the statutory rule, provided by the customs revenue laws, does not apply. There was no evidence of the cost of production in British Columbia, or, indeed, any that smoking opium is manufactured therein. It will not be presumed that smoking opium is freely offered for sale in British Columbia, because of the law prohibiting traffic in it. There is neither a legal rule provided by which to determine the value, if any, of such opium, nor any evidence sufficient to find a value for it.

[7-12] There still remains to be considered the effect, if any, of section 8801f upon section 2908, R. S. In section 8801f, in speaking of opium, its preparations and derivatives, did Congress intend to include smoking opium? On account of manifest uncertainties and ambiguities, arising under this statute and section 2809, R. S., which it adopts by reference, construction must be resorted to. Section 2809, R. S., measures the penalty by the value of the merchandise not manifested. This rule is perfectly proper in the case of opium subject to importation; but is it applicable, and did Congress intend it to be applied, in forbidden importations of smoking opium not manifested?

Section 8801f directly provides for a penalty and forfeiture to be imposed against the vessel, and, the present case being one to recover a penalty from the master, under section 2809, R. S., the construction of section 8801f should not be undertaken by the court further than is necessary. This section recites that—

"Such vessel shall be liable for the penalty and forfeiture described in section 2809, R. S. * * * "

The only forfeiture stated in section 2809, R. S., is the forfeiture of the merchandise belonging to the master, mate, officers, or crew of the vessel. Was it intended by the foregoing to forfeit the interest the vessel had on account of freight in the opium omitted from the manifest, or was it intended to subject the vessel to forfeiture, generally, under sections 5792 and 5766, Comp. St.? It could not have been intended that the vessel should be liable for a penalty in addition to its own forfeiture.

Generally, merchandise consigned to others than the master, mate, officers, or crew, and omitted from the manifest, is not subject to forfeiture under section 2809, R. S. This shows that it was intended by section 8801f to effect a forfeiture in the case of opium not applicable to other merchandise. By the former section forfeiture was not provided for general merchandise (the property of those not connected with the ship) for the default of the master in failing to manifest; but by section 8801f, in the matter of opium, such forfeiture was provided.

The penalty and forfeiture pronounced are fixed quantities. Therefore is it likely that Congress would impose the same penalty for the failure to manifest a lawful import as it would a prohibited one, if the manifesting of the latter were contemplated—particularly in view of the severity of the punishment provided for the willful importation of smoking opium by other sections of the law? Does not the requirement that opium be manifested, under a penalty if omitted, imply the law's protection of some one in case of compliance with such requirement? No such protection could be provided in the case of the importation of smoking opium. Therefore it is unreasonable to presume it was intended to be covered by section 8801f.

If no room were left for the operation of the penalty and forfeiture provided for in section 8801f, supra, except in case of the failure to manifest smoking opium, it could be forcibly contended that a penalty equal to the value of such opium accrued against the vessel, and the court would have to treat it as a thing of value, and search for a measure of value. But such is not the case, for, under section 8800, Comp. St., opium and preparations and derivatives thereof, other than smoking opium, or opium prepared for smoking, may be imported for medicinal purposes.

"Preparations and derivatives," these words being associated, take color from one another, and, to one of average understanding, "preparations and derivatives of opium" would not suggest smoking opium. Smoking opium may be prepared from a preparation of opium, or even from the residue of smoking opium, yen shee. Section 6287a, Comp. St. So smoking opium cannot always be accurately described as a preparation of opium, as that expression is ordinarily understood.

Congress, in using the expression "preparations and derivatives" of opium, was using an expression familiar in sections other than those of this act. Section 5291, Schedule A, par. 47, and section 6287g, Comp. St. That section 8801f, in using the words "preparations and

derivatives thereof," contemplates drugs as properly used in medicine, is shown by including cocaine:

"Opium or cocaine or preparations or derivatives thereof."

Cocaine, its preparations and derivatives, are not mentioned in either section 8800 or 8801, or in any of the other sections of the act of January 17, 1914 (38 Stat. 275, c. 9 [Comp. St. §§ 8800–8801f]), relating to imports into the United States. But it is included with opium, its preparations and derivatives, in section 5291, par. 47, and section 6287, subsection (g), supra, both of which latter include, as associated dangers, hedged about with restrictions, opium and cocaine, preparations and derivatives thereof.

All of these sections are limited to those drugs of which opium and cocaine form the base, and to those alone, further showing that section 8801f should be construed for its proper understanding rather with these two sections, than alone with sections 8800 and 8801, neither of which mentions cocaine. Any opium, preparations and derivatives thereof, for medicinal purposes, excepting smoking opium, can be imported under regulations prescribed by the Secretary of the Treasury. Section 8800, Comp. St. Opium, cocaine, salts, preparations and derivatives thereof, except smoking opium, can be exported to countries regulating their entry, under such regulations. Section 8801d, Comp. St.

Having, in the two sections giving the right to import and export opium, its preparations and derivatives (8800 and 8801d), pointed out that the right in neither case extended to smoking opium, may not an intent be shown thereby, in using, in section 8801f, the expression "its preparations and derivatives," not to include smoking opium, providing, as it does, a new penalty for failure to comply with an existing regulation, as to the manner of importing merchandisable opium? In sections 8800 and 8801d, in defining what opium can be imported and exported, exactness was necessary; but section 8801f, regulating the procedure and imposing penalties for an irregularity in bringing within the United States something which a right had been given to import, the same exactness in this particular was not requisite. That which can be lawfully imported had already been definitely stated.

Under the familiar rule that the enactment of a special statute repeals, or takes the subject out of, a general statute, which might otherwise include the particular, the limiting of the penalty and forfeiture to the vessel by this latter section would, in any event, indicate an intention on the part of Congress to leave the smuggler to be punished, alone, by fine, imprisonment, and forfeiture of the opium, as provided in section 8801, and the master not at all, unless criminally liable. The maximum fine, $5,000, to which the willful importer is subject, is sufficient in the vast majority of cases to render superfluous a penalty.

There is nothing in the customs revenue laws to indicate, in requiring the making and delivering to government officers by consignee and ships's officers of manifests, entries, declarations, bills of lading, and invoices of merchandise, any intention or purpose, other than to secure and facilitate the determination of the amounts and payments of

the duties accruing upon imports. The danger arising from the lawful importation of opium, its derivatives and preparations, for medicinal purposes, except smoking opium, was deemed sufficient to warrant the regulation thereof by the Secretary of the Treasury, not applicable to other merchandise. These regulations are authorized by section 8800. It is fair to presume that the same consideration actuated Congress in providing a penalty (section 8801f) in case of failure to properly manifest opium entitled to importation, which is not provided for in case of any other merchandise, except that of the master, mate, officers, or crew of the vessel. The vessel, if a common carrier, is not, in case of other merchandise, liable, unless the owner or master is a consenting party, or privy thereto; the only remedy being an action against the master. 29 Op. Attys. Gen. 364; section 5766, Comp. St.

Interpretations should be, not according to the letter of the statute, but the intent should be gathered from all parts of the law. The letter should not be followed, if a result which is absurd follows, or if a more reasonable meaning presents itself. U. S. v. Hogg, 112 Fed. 909, 50 C. C. A. 608; Interstate Drainage & Investment Co. v. Board of Com'rs, 158 Fed. 270, 85 C. C. A. 532; In re Matthews (D. C.) 109 Fed. 603. It is true that one of the surest means in fixing and determining the scope of a statute is the insertion of an exception or proviso; but, like other canons of construction, its force may be overcome by other evidence of intention. The denial of smoking opium to importation and exportation (sections 8800 and 8801d) is in the nature of an exception. But this rule would be invoked with better grace for the interpretation of those particular sections than of 8801f, a statute concerning other matters, the manifesting of imports for duty purposes. The first of these statutes defines what opium can be and cannot be imported. The latter provides one of the regulations for the importation of that which can be imported. There was, therefore, need for the exception in the former, in order to remove all doubt; not so in the latter.

The rule of interpretation by considering the exception is used to determine those things which do fall within the wider scope of the statute, as indicated by those things which have been excepted from its effect. But this rule cannot be invoked for that purpose here, at least with the same force, because the only thing excepted is smoking opium, and nothing else is claimed to fall within the statute, similar in nature to smoking opium, by reason of the latitude given the statute by such exception.

"The * * * usual office of a proviso is to except something out of a statute which would otherwise be in it." Deitch v. Staub, 115 Fed. 309, at page 310, 53 C. C. A. 137, at page 138.

"Ordinarily, the office of a proviso in a statute is to modify or restrain the enacting clause." U. S. v. Kansas City So. Ry. Co. (D. C.) 189 Fed. 471, at page 472.

"* * * It is no doubt the general rule that a proviso to a particular section does not apply to other sections, and that it is to be construed with reference to the immediately preceding parts of the clause to which it is attached. But such rule is not controlling, especially in such composite structures as tariff and appropriation acts. In U. S. v. Babbit, 1 Black, 55, 17 L. Ed. 94, it was held that the particular proviso then under consideration

was 'not limited in its effect to the section where it is found, but that it was affirmed by Congress as an independent proposition,' applying alike to all officers of 'this class,' including officers not mentioned in the section which contained the proviso. The true rule seems to be that, 'while the position of a proviso in a statute has a great and sometimes a controlling influence upon the extent of its application, yet the inference from its position cannot overrule its plain general intent.' Lewis' Sutherland Statutory Construction (2d Ed.) § 352, and authorities cited." U. S. v. R. F. Downing & Co., 146 Fed. 56, at page 59, 76 C. C. A. 376, at page 379.

Applying the rule announced in this case, the express exception of smoking opium in section 8800 becomes, by implication, a part of section 8801f. Statutes are construed with reference to the common law. In construing statutes in derogation of the common law, there should be no further or greater departure than the statute expressly declares. A statute, the effect of which is to recognize rights of property or value in an outlawed thing, a nuisance per se, a thing malum in se, is certainly in derogation of the common law. Before it can be given such effect, it must clearly so declare. This section 8801f does not do.

If such a radical departure from established principles was contemplated as to undertake to give the qualities of property and value to an outlawed thing, respect for the uniform administration of the law would doubtless have suggested to the enacting Congress that such purpose be clearly and unequivocally expressed. This it has not done; hence I conclude it did not so intend. If such departure was intended, it would not relate back to give to section 2809, R. S., a different effect, in so far as the imposition of the penalty therein provided against the master was concerned, whatever might be its effect regarding the liability of the vessel.

It is not intended by anything said herein to hold that section 8801f does not provide for a forfeiture of a vessel on account of failure to manifest smoking opium, but the provision for a penalty equal to the value must be limited to cases where the subject of importation is merchandisable opium.

Judgment for the defendant.