## SAMUEL T. TISDALE *versus* JAMES HARRIS.

After the defendant had agreed verbally with the plaintiff's agent to transfer shares in a manufacturing corporation to the plaintiff, and had written a letter to an agent to transfer the shares into the plaintiff's name and transmit the certificate to the defendant, the plaintiff's agent signed a memorandum agreeing to pay the defendant the price of the shares when the defendant should furnish the certificate. It was *held*, that there was not a contract in writing on the part of the defendant, and therefore parol evidence of his contract was not objectionable on that ground. .

A contract for the sale of shares in a manufacturing corporation, is a contract for the sale of goods or merchandise within the statute of frauds, and in the absence of the other requisites of the statute, must be proved by some note or memorandum in writing signed by the party to be charged or his agent.

ASSUMPSIT by the plaintiff, an inhabitant of New York, against the defendant, a merchant of Boston, on a contract alleged to have been made in October 1835, by which the defendant agreed to sell to the plaintiff two hundred shares, with all the earnings thereon, in the capital stock of the Collins Manufacturing Company, a corporation established in Connecticut, at $10·80 per share, the par value being $10 per share. The object of the suit was to recover $300, being the amount of a dividend of 15 per cent on the two hundred shares, declared on the 7th of October, 1835, and payable on the 15th.

At the trial, before *Shaw* C. J., Nathaniel Curtis junior, of the firm of Curtis & Leavins, being called as a witness by the plaintiff to prove the contract and the breach, the defendant objected to any parol evidence of the contract, because the contract was reduced to writing, and he produced a memorandum as follows, dated Boston, Oct. 14, 1835, directed to the defendant and signed by Curtis & Leavins : — " Sir, When you will furnish the certificate of 200 shares in the Collins Manufacturing Company to Mr. Samuel T. Tisdale, of New York, we hereby agree to pay you for the same at 108 cents per dollar or 8 per cent advance on the par amount of ten dollars each." But it was ruled, that this paper was not to be considered as the contract of the defendant to sell, but of the plaintiff by his agents to pay ; that if the contract of the defendant to sell was not reduced to writing, the objection to the parol evidence could not prevail.

The witness testified, that at the request of the plaintiff he applied to the defendant about the 10th of October, 1835, in order to ascertain whether he would sell his shares ; that the defendant said he was disposed to sell them at a fair price ; that subsequently the witness offered him the par value ; that the defendant said he would not sell at that rate, and that he had been recently informed that there would probably be a dividend of 10 per cent in December ; that the witness took the refusal of them at $10·80 per share, until he could hear from New York ; that having received a letter from the plaintiff, dated October 13th, he called on the defendant and asked him whether in offering the shares he intended to include all the earnings, and the defendant said yes, all that belongs to them, all that they have earned ; that the witness read to the defendant the letter of October 13th, in which the plaintiff says he will take the stock at $10·80 cash, all earnings or dividends of the company up to the time of sale to be included ; that the defendant wrote a letter to his agent at Hartford, instructing him to transfer the shares into the name of the plaintiff, and send the certificate to the defendant, and the defendant handed the letter to the witness to forward, which he did ; that the defendant said he did not know the plaintiff, and he thought, as the shares would be transferred, he ought to have something to secure him, to which the witness assented, and the defendant wrote the memorandum which the witness signed, agreeing to pay him the money ; that after sufficient time had elapsed for an answer, the witness called on the defendant, and at that time both the witness and the defendant had received information that a dividend of 15 per cent had been declared upon the shares ; that at subsequent interviews the witness demanded the certificate of stock with an authority to receive the dividend, and was ready thereupon to pay the money, but the defendant declined giving the authority to receive the dividend ; that some weeks afterwards, and after this action had been commenced, the defendant called on the witness for the money and threatened to sue him upon the contract which he had given for the plaintiff, if he did not pay it, whereupon the witness took the certificate and paid the money, but under an express declaration that it

was not to prejudice the claim of the plaintiff for the dividend.

The question of fact was left to the jury, whether the bargain made by the defendant for the sale of the shares included all dividends then due or growing due, with directions, if it did, to find a verdict for the plaintiff ; otherwise to find a verdict for the defendant.

A verdict was returned for the plaintiff ; which the defendant moved to set aside : 1. Because parol evidence was admitted to add to and vary a written contract made subsequently to the conversation and letters referred to ; 2. Because the contract set up was within the statute of frauds, being a contract for the sale of goods, wares or merchandise for the price of fifty dollars or more, under which, at the time of action brought, there had been no acceptance of the same or any part thereof by the purchaser, nor any earnest or part payment made, and so was incapable of proof otherwise than by memorandum in writing signed by the defendant or his agent.

*Bartlett* and *F. C. Loring*, in support of the motion, cited to the point that the contract related to *goods* or *merchandise*, and so was within the statute of frauds, Jacob's Law Dict. voc. *Chattels ; Anon.* 1 P. Wms. 267 ; *Ford and Sheldon's case*, 12 Co. 1 ; *Ryall* v. *Rolle*, 1 Atk. 165 ; Roberts on Fr. 184 ; 2 Stark Evid. (4th Amer. edit.) 608 ; 2 Phillipps on Evid. (6th edit.) 94 ; *Pickering* v. *Appleby*, Comyns, 354 ; *Colt* v. *Nettervill*, 2 P Wms. 307 ; *Mussell* v. *Cooke*, Prec. Chan. 533.

*C. P. Curtis* and *B. R. Curtis*, contrà, cited in reference to the same point, *King* v. *Capper*, 5 Price, 217 ; *Wildman* v. *Wildman*, 9 Ves. 177 ; Eden on Bankr. 10 ; 2 Bl. Com. 476 ; *Crull* v. *Dodson*, Select Cas. in Chan. 41 ; *Latham* v. *Barber*, 6 T. R. 67 ; *Dorriens* v. *Hutchinson*, 1 Smith, 420 ; *Bordenave* v. *Gregory*, 5 East, 107 ; *Wickes* v. *Gordon*, 2 Barn. & Ald. 335 ; 3 Chitty's Laws of Commerce &c., 92, 284 ; *Nightingal* v. *Devisme*, 5 Burr. 2592.

SHAW C. J. delivered the opinion of the Court. Several points reserved at the trial of this cause, are now waived, and the motion made by the defendant for a new trial, is placed on two grounds.

*Tisdale*
*v.*
*Harris.*

*June 28th*
*1837.*

*March 12th*
*1838.*

Tisdale
v.
Harris.

First, that under the circumstances, parol evidence was not admissible, because the contract of the parties was reduced to writing, and that such writing was the best evidence. But the Court are of opinion, that the objection is not sustained by the fact. No contract in writing was made by the defendant with the plaintiff, to sell those shares. After the negotiation had resulted in an agreement, the agent of the plaintiff, in the name of his firm, gave the defendant a memorandum in writing, undertaking to pay the money, on the performance of the defendant's agreement to transfer the shares. But it was not signed by the defendant, nor by any person for him, nor did it purport to express his agreement. The Court are therefore of opinion, that the defendant's agreement not being reduced to writing, the parol evidence was rightly admitted.

But by far the most important question in the case, arises on the objection, that the case is within the statute of frauds. This statute, which is copied precisely from the English statute, is as follows. "No contract for the sale of goods, wares or merchandise for the price of ten pounds ($33·33) or more, shall be allowed to be good, except the purchaser shall accept part of the goods so sold, and actually receive the same or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the said bargain, be made and signed by the parties to be charged by such contract, or their agent, thereunto lawfully authorized."

This being a contract for the sale of shares in an incorporated company in a neighboring State, for the price of more than ten pounds, and no part having been delivered, and no purchase money or earnest paid, the question is, whether it can be allowed to be good, without a note or memorandum in writing, signed by the party to be charged with it. This depends upon the question, whether such shares are goods, wares or merchandise within the true meaning of the statute.

It is somewhat remarkable that this question, arising on the *St.* 29 *Car.* 2, in the same terms, which ours has copied, has not been definitively settled in England. In the case of *Pickering* v. *Appleby*, Com. Rep. 354, the case was directly and fully argued, before the twelve judges, who were equally

divided upon it. But in several other cases afterwards determined in Chancery, the better opinion seemed to be, that shares in incorporated companies, were within the statute, as goods or merchandise. *Mussell* v. *Cooke*, Prec. in Ch. 533 ; *Crull* v. *Dodson*, Sel. Cas. in Ch. 41.

We are inclined to the opinion, that the weight of authorities, in modern times, is, that contracts for the sale of stocks and shares in incorporated companies, for more than ten pounds, are not valid, unless there has been a note or memorandum in writing, or earnest or part payment. 4 Wheaton, 89, note ; 3 Starkie on Evid. 4th Amer. Edit. 608.

Supposing this a new question now for the first time calling for a construction of the statute, the Court are of opinion, that as well by its terms, as its general policy, stocks are fairly within its operation. The words " goods " and " merchandise," are both of very large signification. *Bona*, as used in the civil law, is almost as extensive as personal property itself, and in many respects it has nearly as large a significatio i in the common law. The word " merchandise " also, including in general, objects of traffic and commerce, is broad enough to include stocks or shares in incorporated companies.

There are many cases indeed in which it has been held in England, that buying and selling stocks did not subject a person to the operation of the bankrupt laws, and thence it has been argued that they cannot be considered as merchandise, because bankruptcy extends to persons using the trade of merchandise. But it must be recollected that the bankrupt acts were deemed to be highly penal, and coercive, and tended to deprive a man in trade of all his property. But most joint stock companies were founded on the hypothesis at least, that most of the shareholders took shares as an investment and not as an object of traffic ; and the construction in question only decided, that by taking and holding such shares merely as an investment, a man should not be deemed a merchant so as to subject himself to the highly coercive process of the bankrupt laws. These cases, therefore, do not bear much on the general question.

The main argument relied upon, by those who contend that

shares are not within the statute, is this. That statute pro
vides that such contract shall not be good &c., among other
things, except the purchaser shall accept part of the goods.
From this it is argued, that by necessary implication, the
statute applies only to goods, of which part may be delivered.
This seems however to be rather a narrow and forced con-
struction. The provision is general, that no contract for the
sale of goods &c. shall be allowed to be good. The excep-
tion is, when part are delivered ; but if part cannot be de-
livered, then the exception cannot exist to take the case out
of the general prohibition. The provision extended to a
great variety of objects, and the exception may well be con-
strued to apply only to such of those objects to which it is
applicable, without affecting others, to which from their nature
it cannot apply.

There is nothing in the nature of stocks, or shares in com-
panies, which in reason or sound policy should exempt con-
tracts in respect to them from those reasonable restrictions,
designed by the statute to prevent frauds in the sale of other
commodities. On the contrary, these companies have become
so numerous, so large an amount of the property of the com-
munity is now invested in them, and as the ordinary *indicia*
of property, arising from delivery and possession, cannot take
place, there seems to be peculiar reason for extending the
provisions of this statute to them. As they may properly bé
included under the terms goods, as they are within the reason
and policy of the act, the Court are of opinion, that a con-
tract for the sale of shares, in the absence of the other requi-
sites, must be proved by some note or memorandum in writ-
ing ; and as there was no such memorandum in writing, in the
present case, the plaintiff is not entitled to maintain this
action. As to the argument, that here was a part perform-
ance, by a payment of the money on one side, and the de-
livery of the certificate on the other, these acts took place
after this action was brought, and cannot therefore be relied
upon to show a cause of action when the action was com-
menced.

*Verdict set aside and plaintiff nonsuit.*