**POUND et al. v. LAWRENCE, Jr.**
**(No. 1234.)**

(Court of Civil Appeals of Texas.   El Paso.
        June 9, 1921.   Rehearing Denied
                  June 30, 1921.)

Monopolies ⬤⟶17(1)—Agreement with promoters not to sell the promoted stock at less than promoters' price held violation of Anti-Trust Act; "commodities."

Plaintiff owned stock in an oil company which he desired to sell at 75 cents per share. Defendant promoters were selling stock in the company at $1 per share, and agreed with plaintiff that if he would not sell his stock for 60 days, so as to maintain the price at $1 per share, they would guarantee him 90 cents a share for it. *Held*, the guaranty agreement was unenforceable by plaintiff, being a violation of the Anti-Trust Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796, 7799), prohibiting, among other things, a combination to fix the price of any commodity, as shares of stock are within the meaning of the term "commodities," which is a broader term than merchandise, and which, in referring to commerce, may mean almost any article of movable or personal property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commodity.]

Walthall, J., dissenting.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by C. H. Lawrence, Jr., against George H. Pound and others. From judgment for plaintiff, defendants appeal. Reversed and dismissed.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellants.

S. T. Jeffreys, Fred C. Knollenberg, and N. J. Morrison, all of El Paso, for appellee.

HARPER, C. J. This suit was brought by appellee, C. H. Lawrence, Jr., against appellants, George H. Pound, H. R. McDowell, and J. O. Crockett, stockholders in George H. Pound & Co., a corporation dissolved prior to the institution of the suit, to recover of them individually the sum of $1,440, which he alleges to be due and owing to him under a contract for 1,600 shares of stock of the American Oil & Refining Company, at 90 cents per share. To charge defendants individually, he alleges that defendants are the owners and holders of practically all of the stock of said corporation, and that they had not fully paid for their shares of stock in the corporation, and plaintiff seeks to have defendants pay over the said unpaid amounts to have same held to meet the debts of the corporation.

The pertinent portions of the petition stating the cause of action, and from which the matters in controversy presented here arise, are as follows:

"(3) That on the said 23d day of January, 1920, the said George H. Pound & Co., as said corporation, was then and there more especially engaged in and in charge of the promotion and sale of the shares of stock of the said American Oil & Refining Company to their customers and to the public generally, at and for the price of $1 per share, and for which services in so promoting and selling the said shares of the said American Oil & Refining Company, as plaintiff is informed and believes and so charges the facts to be, it, the said George H. Pound & Co., obtained and received from the said American Oil & Refining Company large sums of money as commission on said sales.

"(4) That the said defendants were also the owners and in control of practically all of the capital stock of the said American Oil & Refining Company, and the officers and managers of the said George H. Pound & Co., as well as the said American Oil & Refining Company, and that in truth and in fact the said George H. Pound & Co. was then acting as the underwriter and sales agent of the said American Oil & Refining Company, and that the said corporation and the said American Oil & Refining Company were practically one and the same company, managed and controlled by the same officers, manager, and directors.

"(5) That at said time, to wit, on the 23d day of January, 1920, this plaintiff was able, ready, and willing to sell on said date, and intended to sell the said 1,600 shares of stock of the American Oil & Refining Company owned by him as aforesaid, at and for the price of 75 cents per share; and at said time and at said date there were purchasers who were ready, able, and willing to purchase the said 1,600 shares owned by him, aforesaid, at and for the price of 75 cents per share, and that on said date and at said time he intended to sell, and he could have sold, the said 1,600 shares owned by him as aforesaid at and for the said sum of 75 cents per share net, and without the payment of any commission on said sale.

"(6) That George H. Pound and the defendants learned of plaintiff's intention and purpose to sell the said 1,600 shares owned by him as aforesaid, at said price of 75 cents per share, and they, the said defendants, knowing and believing that the sale by the said plaintiff of said shares at said price of 75 cents per share would tend to embarrass and hinder the said George H. Pound & Co. in their sale of said stock at $1 per share, and would depreciate the price of the stock then owned and controlled by the said George H. Pound & Co., agreed with said plaintiff that in consideration of said plaintiff forbearing and refraining from selling his said 1,600 shares of stock at said price of 75 cents per share and withholding the same from sale at said price, it, the said George H. Pound & Co., guaranteed to the said plaintiff that he, the said plaintiff, within 60 days from said date, would receive, and agreed that it, the said George H. Pound & Co. would, within 60 days from said date, pay unto the said plaintiff, the sum of 90 cents per share for the said

1,600 shares owned by the said plaintiff aforesaid; and thereupon this plaintiff, in consideration of the said agreement on the part of the said George H. Pound & Co., and acting upon the said agreement and guaranty, did refrain and forbear from selling any of his said 1,600 shares of stock."

The defendants answered by general demurrer and general denial. The case was submitted to the jury on one special issue, viz.:

"Do you find from a preponderance of the evidence that it was agreed in substance by and between George H. Pound, acting in behalf of George H. Pound & Co., and the plaintiff, C. H. Lawrence, Jr., that in consideration of the said C. H. Lawrence, Jr., forbearing and refraining from selling 1,600 shares of stock of the American Oil & Refining Company at a price of 75 cents per share, George H. Pound & Co. would, within 60 days from January 23, 1920, pay unto the said Lawrence the sum of 90 cents per share for said 1,600 shares aforesaid? Answer yes or no."

The jury answered the question in the affirmative.

Judgment was rendered for the plaintiff for the amount sued for, viz. $1,440.

Appellants present two assignments of error. The first assignment is directed to the overruling of the general demurrer; the second assignment claims error in rendering judgment for plaintiff on the ground that the pleadings and the evidence show that the alleged agreement on which the suit is based is illegal, void, and contrary to public policy, being in violation of the Texas Anti-Trust Act, as found in articles 7796 to 7799, Vernon's Sayles' Texas Civil Statutes.

The two assignments present the same questions, and will be considered together.

Appellee Lawrence testified:

"I am acquainted with George H. Pound. I saw him on or about the 23d day of January, 1920, in my place of business. * * * At that time I was the owner of 1,600 shares of stock in the American Oil & Refining Company. On that date I had an opportunity to sell my 1,600 shares of stock at the price of 75 cents per share. * * * Stock of the American Oil & Refining Company at that time was being sold for $1 per share. * * * (Pound) said he did not like to have me sell my stock because it would hurt their sales, as they were promoting the stock, and selling other stock for $1 per share, and he wanted to know if we could not come to some kind of an agreement so I would hold my stock and not sell it. I told him I would if he would guarantee me $1 per share. We were speaking of stock in the American Oil & Refining Company. * * * I told him I was willing to knock off 10 cents per share if he would make me a guaranty, guaranteeing me 90 cents per share, and I would hold the stock for the time he wanted, and then he stated 60 days; said if I would hold the stock 60 days that he would pay me 90 cents per share, or, if I demanded the money before that time, they would try to sell it and give me the money; but they guaranteed me 90 cents per share within 60 days, and agreed to pay me that within 60 days. I relied upon that agreement at that time. At that time I agreed to refrain from selling my stock upon his representation and agreement. * * * I waited 60 days for him to pay the 90 cents per share. * * * I had several opportunities to sell the stock. I cannot mention their names, several parties. * * * He was to have 60 days in which time I was to make no effort to sell my stock. * * * After the 23d day of January I made no effort to sell the stock at all."

Is the agreement pleaded and proved inhibited by the provisions of title 130, c. 1, Rev. Civ. Statutes of Texas because it constitutes a trust or "conspiracy against trade"?

Article 7796 of said chapter defines a trust as a "combination of capital, skill or acts, by two or more persons * * * for either, any or all of the following purposes:

"1. To create or which may tend to create, or carry out restrictions in trade or commerce. * * *

"2. To fix, maintain, increase or reduce the price of merchandise, produce or commodities. * * *

"3. To prevent or lessen competition in the * * * sale or purchase of merchandise, produce or commodities. * * *

"4. To fix or maintain any standard or figure whereby the price of any article or commodity of merchandise * * * shall be in any manner affected, controlled or established.

"5. To make, enter into, maintain, execute or carry out any contract, obligation or agreement by which the parties thereto bind, or have bound, themselves not to sell * * * any article or commodity * * * or by which they shall agree in any manner to keep the price of such article or commodity * * * at a fixed or graded figure, or by which they shall in any manner affect or maintain the price of any commodity * * * between * * * themselves and others, to preclude a free and unrestricted competition among themselves or others in the sale * * * of any such article or commodity * * * whereby its price * * * might be * * * affected."

Article 7799 of same chapter reads:

"Any and all trusts, monopolies and conspiracies in restraint of trade, as herein defined, are prohibited and declared to be illegal."

We think that from the whole record, pleadings and proof recited above (1) that the appellee and appellant were owners of shares of stock in the appellant company; (2) that both desired to sell upon the market; (3) that they entered into an agreement whereby appellee agreed not to sell his shares of stock for 60 days for the purpose of maintaining the price of such shares, both of appellee and appellants, at $1 per share; and (4) that

such agreement was in violation of the letter of those portions of the statute above quoted, and therefore void.

It is the contention of appellee that the buying and selling of shares of stock in a corporation is not "trade," or "commerce," or "aids to commerce," within the meaning of the Texas Anti-Trust Statute; and that the terms "merchandise," "produce" and "commodities," as used in the statute, do not apply to mere evidence of property or value, such as shares of stock, but only to articles of trade and commerce of prime necessity commonly bought and sold in the market by merchants. If they are either they come within the statute.

We have concluded that shares of stock are within the meaning of the term "commodities." The Supreme Court of this state, in Queen Insurance Co. v. State, 86 Tex. 265, 24 S. W. 397, 22 L. R. A. 483, said that—

The word commodity "is ordinarily used in the commercial sense of any movable or tangible thing that is ordinarily produced or used as the subject of barter or sale; and we think that this was the meaning intended to be given to it by the Legislature in the statute in question. This clearly appears by the context."

The word "commodity" is a broader term than merchandise, and in referring to commerce it may mean almost any article of movable or personal property. Shuttleworth v. State, 35 Ala. 415; State v. Henke, 19 Mo. 225. A share of stock in a corporation, while itself not the tangible property of the corporation, yet it is a tangible thing, perceptible to the touch, a thing capable of being possessed and owned, and while incorporeal in its nature, it is personal property, a thing subject to barter and sale, mortgage and pledge, liable to attachment and execution like other personal property, and a subject of conversion. Hewson v. Peterman Mfg. Co., 76 Wash. 602, 136 Pac. 1158, 51 L. R. A. (N. S.) 398, Ann. Cas. 1915D, 346, the Supreme Court of the State of Washington said that it is established by the great weight of authority that corporate stock is goods, wares, and merchandise within the meaning of the statute of frauds of that state, which provides:

"No contract for the sale of any goods, wares or merchandise, for the price of $50.00 or more shall be 'good and valid, unless the purchaser shall accept and receive part of the goods, * * * or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain be made or signed by the party to be charged thereby, or by some person * * * by him lawfully authorized."

To the same effect is the holding of the Supreme Court of Massachusetts in Tisdale v. Harris, 37 Mass. (20 Pick.) 9. In People v. Federal Security Co., 255 Ill. 561, 99 N. E.

668, the Supreme Court of Illinois held that the word "commodities" was broad enough to include stocks and bonds, and that a corporation engaged in buying and selling stocks and bonds is engaged in a mercantile pursuit. or business.

The next counter proposition urged by the appellee is:

"That it is not necessary for him to base the validity of the contract upon this ground, for, conceding that such shares of stock are such commodities as to be included within the statute, the contract pleaded does not come within the meaning of the statute, because it was merely an agreement upon the part of Lawrence to sell and George H. Pound & Co. to buy his 1,600 shares at 90 cents per share, but Pound & Co. was not prohibited from selling all or any part of its stock to any person at any price."

The vice in the agreement pleaded and proved is that the appellee agreed not to sell for 75 cents per share at the time, and not for any price for 60 days, because he by so doing would injure the sales of Pound & Co. of its stock at $1 per share. Thus it clearly appears that he made the agreement for a twofold purpose, to secure an increased price of his own shares and to accommodate Pound & Co., or assist them in keeping all shares of stock up to at least the value of $1 per share, and it is noted that Lawrence nowhere alleges or testifies to any agreement to sell to Pound & Co. in all events, but agrees not to sell for 60 days upon the guaranty. We take it the term "guaranty," in the connection used, simply means the assurance from Pound that he by so doing should have at least 90 cents per share. So not being bound to sell to Pound & Co. at the end of 60 days, he then would have been at liberty to sell his 1,600 shares for any price more or less than 90 cents per share as he chose, so the primary purpose upon the part of both parties to this agreement was as to Pound & Co. to maintain the price of $1 per share, and as to Lawrence to increase the price which he could have obtained, both expressly inhibited by subdivision No. 2, of the statute quoted. Star Mill & Elevator Co. v. Fort Worth G., etc., Co., 146 S. W. 604.

We are therefore of the opinion that the cause should be reversed and dismissed; and it is so ordered.

WALTHALL, J. (dissenting). I do not concur in the result reached by the majority members of this court in the proper disposition to be made of this case. I fully concur in the majority opinion that shares of stock in the corporation are "commodities," as that term is used in the anti-trust articles of our statute, but I am of the opinion that the trial court was not in error in overruling the appellants' general demurrer, nor in rendering

'judgment upon the fact submitted and found by the jury.

In addition to the testimony of appellee, Lawrence, I submit that of George H. Pound, though not materially different from that of Lawrence. Pound testified:

"On the 23d day of January, 1920, the corporation of George H. Pound & Co. was doing business in El Paso, and did so continue to do business here until April 1, 1920; at that time the corporation was dissolved. I was president, and C. A. Williams was secretary and treasurer. During that time George H. Pound, H. B. McDowell, and J. O. Crockett were directors of that corporation. I was manager of the George H. Pound & Co. from the 23d of January, 1920, up to the 1st day of April, 1920. * * * The American Oil & Refining Company was a joint-stock association. * * * On the 23d day of January, 1920, down to the 1st of April, 1920, George H. Pound Company was the sole agent and underwriters of the American Oil & Refining Company as regards the handling and selling of the stock of the American Oil & Refining Company. * * * I had a conversation with Mr. Lawrence there in his office. * * * After I was introduced to Mr. Lawrence, I said: 'I understand you have some stock of the American Oil & Refining Company to sell, which you are going to sell for less than $1. He said that he had, and he might sell it for less than $1. I was selling it at that time on the curb for $1. * * * I told him I would prefer that he would not sell his stock for less than $1, and he said if I would guarantee him a price he would not do so. * * * My object in going down there [to Lawrence's place of business] was that I preferred that he not sell his stock for 75 cents. My purpose in going over there was to do something to prevent him from selling it for less than $1, because I was then selling the same stock on the curb for $1, provided I could do so in a proper way. * * * I went there for the purpose of getting Lawrence to forbear and refrain from selling his 1,600 shares, provided I could do so properly. He did not sell his stock up to the time he told me he put the matter in the hands of his attorney. I sold the stock of the American Oil & Refining Company during that time for $1 a share."

The action of the trial court in overruling the general demurrer I think presents the material point of controversy in the case. The sixth subdivision of the petition copied into the majority opinion, and to which the demurrer is directed, states the agreement entered into by Lawrence and Pound. It reads:

"George H. Pound & Co. agreed with plaintiff [Lawrence] that in consideration of said plaintiff forbearing and refraining from selling his 1,600 shares of stock at said price of 75 cents per share and withholding same from sale at said price, that it, the said George H. Pound & Co., guaranteed to the said plaintiff that he, the said plaintiff, within 60 days from said date, would receive, and agreed that it, the said George H. Pound & Co. would within 60 days from said date pay unto the plaintiff the sum of 90 cents per share for the said 1,600 shares owned by the said plaintiff aforesaid."

The rest of the paragraph states the action taken by Lawrence under the agreement; that is, that he did refrain and forbear from selling the shares of stock.

The petition and the evidence is somewhat confusing by the use of the word "guaranty." I think that, in view of the latter portion of the paragraph, in stating that Pound agreed to pay Lawrence within 60 days the sum of 90 cents per share for the 1,600 shares of stock, the agreement made was not a guaranty, as alleged, but was a collateral warranty, an original and absolute undertaking in præsenti, that Lawrence should realize the sum of 90 cents per share for each share of his stock to be paid by appellants within 60 days. It was not a guaranty to answer for the default of another, which must be in writing; the subject-matter of the agreement was things, shares of stock, and not persons, and in that sense, though not in writing, the agreement is enforceable, if not void as contravening the anti-trust laws of this state. The case was tried upon the issue as to whether Pound agreed to pay Lawrence 90 cents per share, within 60 days, in consideration that Lawrence would not sell the shares in the market at 75 cents per share. Lawrence said Pound was to have 60 days in which time he (Lawrence) was to make no effort to sell his stock, and that he made no effort at all to sell. There is practically no difference between the testimony of Pound and Lawrence on the issue presented in the appeal; the difference in portions of their evidence was settled by the jury in the issue presented, and found as stated in the opinion. The petition does not show on its face that subsequent to the agreement Lawrence was to put the shares on the market at any price, nor that Pound was to do so for Lawrence, nor that Pound and Lawrence were to act together in any way in reference to the shares. The only concert of action alleged or shown was that Lawrence was to sell and Pound to buy the shares of stock at the price and time agreed upon.

The jury found under the evidence, and I think on a fair construction of the agreement, that Pound bought the 1,600 shares of stock at the time of the agreement, and agreed to pay for them 90 cents per share within 60 days. That seems to be the construction the parties put upon the agreement, and as construed by the trial court and as found by the jury.

To be a trust under the statute and subject to the demurrer, the petition must show on its face that the parties agreed to a combination of capital, or a combination of skill or acts of the parties with reference to the transaction had, and to accomplish some one or more of the purposes specified under article 7796, V. S.

The term "combination" is not defined by the statute. The term, however, as applied to the anti-trust laws of this state has been defined and construed by our Supreme Court. Judge Denman said in Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079, that—

" 'Combination' as here used means union or association. If there be no union or association by two or more of their 'capital, skill or acts,'. there can be no 'combination' and hence no 'trust.' "

In that case the court was led to the conclusion that the union or association of capital, skill, or acts, denounced by the statute is where the parties in the particular case designed the united co-operation of such agencies which otherwise might have been independent and competing for the accomplishment of one or more of the purposes specified.

I do not understand the law to be that it prohibits Lawrence from making an absolute sale of his shares of stock to Pound, although the effect of such sale is to remove Lawrence as a competitor of Pound in the market in the sale of the shares of stock, or that such sale of the Lawrence shares would have the effect to enable Pound to sell the shares in the market at a higher price than that at which Lawrence was offering them for sale, and but for the sale to Pound Lawrence would have sold them at a lower price than that at which he sold to Pound. Neither the pleading nor the evidence shows Lawrence to be a stockbroker, or that Lawrence owned or had bought or sold any shares of stock other than that involved in the one transaction with Pound, but it does show him to be a wholesale groceryman, and at the time of the transaction was engaged in that business. The evidence further shows that at the time of the transaction shares of stock in the American Oil & Refining Company were being sold on the curb and in the open market at $1 per share. The evidence does not show that any shares of stock, in the American Oil & Refining Company, at that time or any other time, was being offered for sale or sold for less than $1 per share. The evidence further shows that Lawrence sold to Pound at 10 cents less than the open market price to enable Pound to make a commission on the sale, as Pound said it would not be fair to him to buy and make nothing on selling.

The petition at which the demurrer is directed does not allege the intent of Lawrence and Pound in effecting the sale and purchase of the stock, nor its effect upon the market, and I think to consider either the intent of the parties in making the agreement or its effect upon the market of the price of the stock would add to the statute an element not written therein. I am of the opinion that one owning a commodity may sell it to another for cash or on time, regardless of what his intent may be in making the sale, and regardless of the effect such sale may have upon the market price of such commodity by reason of such sale, and although the purchaser, prior to such sale, was a competitor in the market with the seller of such commodity, and without being in combination with the buyer, in capital, skill or acts, and without being in violation of the anti-trust laws of this state.

The view I take of the petition alleging the agreement, the construction the parties themselves put upon the agreement alleged, the evidence offered, and the fact found by the jury, I am of the opinion that there is not alleged such combination of capital, skill, or acts of the parties, and the purpose for which it is formed, as is denounced by the statute, and think the case should be affirmed.