

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

December 7, 1964

Mr. Horace Soule
Railroad Commission of Texas
Motor Transportation Section
Austin, Texas

Opinion No. C-355

Re: Whether the Motor Trans-
portation Division of the
Railroad Commission of
Texas has jurisdiction to
regulate the transportation
of dead human bodies.

Dear Mr. Soule:

You recently requested an opinion of this office on the following questions:

"Does the Railroad Commission of Texas, Motor Transportation
Division, have the jurisdiction to regulate the transportation of
dead [human] bodies ?

"Are dead [human] bodies to be considered as 'property' or 'com-
modities' within the language of the Motor Carrier Statutes,
Article 911b, V.A.C.S. ?"

The above set out questions proposed by you are directly related and,
therefore, will be discussed together.

Article 911b, Vernon's Civil Statutes, commonly referred to as the Motor
Carrier Act, provides for regulation by the Railroad Commission of Texas
of segments of the motor carrier industry. Section 2 of said Act provides:

"No motor carrier, as defined in the
preceding section, shall operate any motor-
propelled vehicle for the purpose of trans-
portation or carriage of property for com-
pensation or hire over any public highway
in the State except in accordance with the
provisions of this Act . . . ."

It is thus seen that if the activities of a carrier cause it to fall within the
definitions of regulated carriers as set out in Article 911b, the Railroad
Commission has jurisdiction to regulate the transportation involved. There

-1679-

are two (2) general categories of regulated traffic in which it might be contended that the transportation of dead bodies would be included. These categories are "Motor Carrier" as defined in Section 1(g) of the Act and "Specialized Motor Carrier" as defined in Section 1(i) of the Act.

Section 1(g) of Article 911b defines a motor carrier in the following language:

> "(g) The term 'motor carrier' means any person, firm, corporation, company, co-partnership, association or joint stock association, and their lessees, receivers or trustees, appointed by any court whatsoever owning, controlling, managing, operating or causing to be operated any motor propelled vehicle used in transporting property for compensation or hire over any public highway in the State . . . ." (Emphasis added)

Section 1(i) of the Act defines a specialized motor carrier in the following language:

> "(i) 'Specialized motor carrier' means any person owning, controlling, managing, operating or causing to be operated, any motor propelled vehicle used in transporting over any public highway in this state over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof . . . .
>
> " . . . .
>
> "For the purpose of this Act, the term 'property requiring specialized equipment' is limited to (1) oil field equipment, (2) household goods and used office furniture and equipment, (3) pipe used in the construction of water lines and pipelines, and (4) commodities which by reason of length, width, weight, height, size, or other physical characteristics require the use of special devices, facilities, or equipment for their loading, unloading, and transportation." (Emphasis added)

As has been previously stated, if the Railroad Commission of Texas has jurisdiction over the transportation over the public highways of the State

of Texas of dead bodies, it must be because said carrier doing said transportation falls within the definition of either "motor carrier" or "specialized motor carrier." The fundamental question to be determined in this regard is whether or not dead human bodies, or corpses, as they are commonly called, are classified as "property" or "commodities" as those terms are used in the above quoted definitions. For the purpose of this opinion, it will be assumed that the other requisites of the definitions have been fulfilled. In other words, it is assumed for the purpose of this opinion that the transportation of the dead bodies is a for hire movement by a common carrier over the public highways in Texas, and during said movement a highway between two or more incorporated municipalities is traversed. Although there may be some difference of opinion as to whether or not specialized equipment, as that term is used in the statute, is required for such movement, for the purposes of this opinion it is irrelevant. This opinion is related solely to the determination of whether or not dead human bodies are "property" or "commodities" as contemplated by Article 911b.

The Act itself is, of course, silent on this point, and there is no expressed intention of the legislature as to whether dead human bodies should fall within the regulation contemplated by the Act. In addition, apparently, there is no Texas case law directly in point. Examination of various authorities reveals that Texas courts have previously been presented with somewhat related questions with regard to property rights in human remains. No Texas case has been found which states that dead human bodies are property. The courts have held that the heirs and survivors have an interest in the deceased, entitling them to bury the body or preserve the remains, such interest being termed by the courts as a "quasi property right." Gray v. State, 114 S.W. 635, (Tex. Crim. 1908); Barnett v. Surratt, 67 S.W.2d 1041, (Tex. Civ. App. 1934, error ref.) In the Barnett case, supra, on page 1042 appears the following language:

> "There is no property right in a dead man's body, in the usually recognized sense of the word, yet it may be considered as a sort of quasi property, in which certain persons have rights therein, and have duties to perform."

There have been found no cases from other jurisdictions directly bearing on the questions presented in this opinion. However, without a lengthy recitation of citations, it may be said that other jurisdictions follow the general reasoning advanced in Gray and Barnett, supra. See Lawson v. State, 24 S.E.2d 326 (Ga. App. 1943); Lubin v. Sydenham Hospital, 42

N.Y.2d 654 (N.Y. Sup. 1943); Litteral v. Litteral, 111 S.W. 872 (Mo. App. 1908).

In the case of In re Wong Yung Ouy, 2 F. 624 (Calif. C.C.A. 1880) the court was called upon to consider the constitutionality of a California statute making it an offense to remove from the place of burial the remains of any deceased person without a permit, for which permit a fee of $10.00 was required. It was contended that the statute violated Article 1, Section 2, § 3 of the United States Constitution, which provides that Congress shall have the power to regulate commerce with foreign nations. The court held the statute to be constitutional, and in so doing, made the following statement:

> "Besides, the remains of deceased persons
> are not 'exports' within the meaning of the term
> as used in the Constitution. The term refers only
> to those things which are property. There is no
> property in any just sense in the dead body of a
> human being."

Of course, the above stated authority is not directly in point to the problem presented herein, but it is at least persuasive for the proposition that dead human bodies are not property for the purpose of transportation regulation under Article 911b. If, as stated in In re Wong Yung Ouy, dead human bodies are not property for the purpose of classification as exports in the regulation of foreign commerce, it would seem to follow that they are not property in the sense of classification as set out by Article 911b.

In 25 C.J.S. 1016-1017 is found the following language:

> "The authorities are almost uniform in hold-
> ing that there is no right of property, in the strict
> sense or in the ordinary use of the term, in the
> dead body of a human being, and after burial the
> body becomes part and parcel of the ground to
> which it is committed. The right, however, to
> bury a corpse, and to preserve the remains . . .
> is a legal right which the courts recognize and
> protect as a quasi property right; and this, in
> the absence of a statute, is the only right one
> may have in a dead body."

Finally, it should be noted that the Interstate Commerce Commission has concluded that the Interstate Commerce Act was not intended to confer

jurisdiction upon the I.C.C. to regulate the operation of carriers transporting corpses in interstate or foreign commerce. Dennis Common Carrier Application (1954), 63 M.C.C. 66. In this decision is found the following language:

> "Contrary to the conclusions in Steffen Common Carrier Application, 34 M.C.C. 779, decided September 1, 1942, we conclude that a corpse is neither property nor personalty as affects the jurisdictional scope of the Interstate Commerce Act. The only characteristic of a corpse which resembles the cumulation of legal rights that constitute property is the right of burial . . . .

> "To qualify the remains of a deceased person as 'property' the transportation of which by motor carrier requires authority from this Commission would in our opinion require specific language in the Interstate Commerce Act. The legislative history of the Act contains no indication of any intent to include such remains within the jurisdiction conferred."

Although it is readily apparent that none of the authorities cited above is directly in point on this question, and although it is realized that a decision made by the Interstate Commerce Commission of the United States is not binding on the Railroad Commission of Texas, it is the opinion of this office that these authorities do present the preferred view that a dead human body is not "property" as that term is used in Article 911b. We therefore conclude that the word "property", as that term is used in Article 911b, does not include dead human bodies, or corpses as they are commonly called.

There have been found no authorities bearing directly upon the question of whether or not dead human bodies are to be considered as "commodities." Webster's Third New International Dictionary defines "commodity" as used or valued, especially when regarded as an article of commerce; as a product of agriculture, mining or sometimes manufacture as distinguished from services. A Federal Court has defined a "commodity" as an article of trade or commerce, a moveable article of trade, something which is bought and sold. United States vs. Shisko, 262 F. 1001 (Wash. D.C. 1919).

In the Texas case of Pound vs. Lawrence, Jr., 233 S.W. 359 (Tex. Civ. App. 1921, error ref.) the court made the following statement:

> "The word 'commodity' is a broader term than merchandise, and in referring to commerce it may mean almost any article of moveable or personal property."

In Nasman vs. Bank of New York, 49 N.Y.S.2d 181 (N.Y. Sup. 1944) the court pointed out that the word "commodity" has been held to include every moveable thing that is bought and sold, except possibly animals.

It is the opinion of this office that the word "commodity", as it is commonly used, would not include dead human bodies or corpses.

## SUMMARY

1. The Railroad Commission of Texas, Motor Transportation Division, does not have the jurisdiction to regulate the transportation of dead human bodies.

2. Dead human bodies are not to be considered as "property" or "commodities" within the language of the Motor Carrier Statute, Article 911b, Vernon's Civil Statutes.

Very truly yours,

WAGGONER CARR
Attorney General

By *Sam L. Kelley*

Sam L. Kelley
Assistant

SLK:sss

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
John Reeves
Bob Flowers
Malcolm Quick
Grady Chandler

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone

-1684-